# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

MICHAEL L. JOHNSON,  
    Plaintiff,

vs.

BRIAN BARNEY, et al.,  
    Defendants.

Case No. 1:21-cv-141  
Hopkins, J.  
Litkovitz, M.J.

**REPORT AND  
RECOMMENDATION**

Plaintiff is a former inmate at the Southern Ohio Correctional Facility (SOCF) and the Madison Correctional Institution (MaCI) who is now incarcerated at the Toledo Correctional Institution (TOCI). He brings this consolidated prisoner civil rights action against various SOCF correctional officers and employees. As explained in this Court's December 16, 2021 Order (Doc. 27), the above-captioned case (*Barney*) has been consolidated with *Johnson v. Little, et al.*, Case No. 1:21-cv-171 (Hopkins, J.), and *Johnson v. Hill, et al.*, Case No. 1:21-cv-155 (Hopkins, J.) (the "Consolidated Cases").[1] (*See* Docs. 13, 15).[2] In *Barney*, plaintiff alleges that defendants Barney, Spriggs and Joseph used excessive force against him in his cell and in the shower in March of 2019. (*See* Doc. 7 at PAGEID 209). In *Little*, plaintiff alleges that defendants Fri and Neff used excessive force against him at the infirmary immediately following the incident described in the *Barney* complaint, and that defendants Setty, Little, Eaches, and Rush watched and failed to intervene. (Case No. 1:21-cv-171, Doc. 6 at PAGEID 75). In *Hill*, plaintiff alleges that defendants Hill and Hart, medical staff members, also witnessed and failed to intervene in defendants Fri and Neff's use of excessive force against him at the infirmary. (Case No. 1:21-cv-155, Doc. 6 at PAGEID 75).

---

[1] All case numbers referenced herein are cases filed in the U.S. District Court for the Southern District of Ohio.  
[2] The complaints in these cases were filed in the above-captioned case at Docs. 12 and 14. Unless otherwise noted, document numbers referenced herein refer to the docket for Case No. 1:21-cv-141.

This matter is before the Court on the motion for summary judgment filed by defendants Barney, Spriggs, and Joseph (Case No. 1:21-cv 141); defendants Fri, Setty, Little, and Eaches (Case No. 1:21-cv-171); and defendants Hill and Hart (Case No. 1:21-cv-155); plaintiff's response (Doc. 96); and defendants' reply (Doc. 101).[3]  Plaintiff has also filed a "Declaration Explaining the documents of the Origin of Plaintiff Memorandum in Opposition to the defendant Motion for Summary Judgment on the issue of Exhaustion of Administrative Remedies." (Doc. 102).  This filing is not permitted under the local rules of this Court, but defendants have not explicitly opposed it.  S.D. Ohio Civ. R. 7.2(a)(2).  Given "the strong policy in favor of deciding cases on their merits[,]" the Court considers this filing.  *Shepard Claims Serv., Inc. v. William Darrah & Assocs.*, 796 F.2d 190, 194 (6th Cir. 1986).

The Court issued a prior Report and Recommendation on defendants' motion (Doc. 104), which it subsequently vacated in light of the Sixth Circuit's intervening decision in *Lamb v. Kendrick*, 52 F.4th 286, 293 (6th Cir. 2022).  (Doc. 114).  In the Order vacating the Report and Recommendation, the Court directed the parties to submit supplemental briefs, in light of *Lamb*, on whether plaintiff made affirmative efforts to comply with step three of Ohio's grievance process that were sufficient under the circumstances and, if so, whether defendants had irrefutable evidence to show that they did not make the grievance process unavailable to plaintiff.  (*See* Doc. 114 at PAGEID 908).  The parties have filed their supplemental briefs (Docs. 116, 119, 122, and 125),[4] and this matter is ripe for review.

Because defendants' motion is premised solely on whether plaintiff exhausted his

---

[3] Counsel for these defendants argue that the same relief is sought by Interested Party, State of Ohio, on behalf of unserved defendant Rush.  (*See* Doc. 90 at PAGEID 657).  This Court's Report and Recommendations that plaintiff's action be dismissed as to both defendant Rush (Case No. 1:21-cv-171) and defendant Neff (Case No. 1:21-cv-155) on the basis of lack of service are pending before the District Judge.  (*See* Docs. 98, 103, and 118).

[4] The Court explained in its February 1, 2023 Order that it would consider both document numbers 119 and 122 as plaintiff's supplemental briefs.  (Doc. 124).

administrative remedies as required under the Prison Litigation Reform Act (PLRA), 42 U.S.C. §

1997e, the Court does not here comprehensively summarize plaintiff's factual allegations in the

Consolidated Cases.

## I. Summary Judgment Standard

A motion for summary judgment should be granted if the evidence submitted to the Court

demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled

to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  *See Celotex Corp. v. Catrett*, 477 U.S.

317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  A grant of

summary judgment is proper unless the nonmoving party "establish[es] genuinely disputed

material facts by 'citing to particular parts of materials in the record . . . or . . .  showing that the

materials cited do not establish the absence . . . of a genuine dispute.'"  *United Specialty Ins. Co.

v. Cole's Place, Inc.*, 936 F.3d 386, 403 (6th Cir. 2019) (quoting Fed. R. Civ. P. 56(c)(1)).  The

Court must evaluate the evidence, and all inferences drawn therefrom, in the light most favorable

to the non-moving party.  *Satterfield v. Tennessee*, 295 F.3d 611, 615 (6th Cir. 2002); *Matsushita

Elec. Indus. Co., Ltd. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Little Caesar Enters., Inc. v.

OPPC, LLC*, 219 F.3d 547, 551 (6th Cir. 2000).

The trial judge's function is not to weigh the evidence and determine the truth of the

matter, but to determine whether there is a genuine factual issue for trial.  *Anderson*, 477 U.S. at

249.  The trial court need not search the entire record for material issues of fact, *Street v. J.C.

Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989), but must determine "whether the

evidence presents a sufficient disagreement to require submission to a jury or whether it is so

one-sided that one party must prevail as a matter of law."  *Anderson*, 477 U.S. at 251-52.

"Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). However, "[f]acts that are not blatantly contradicted by [the evidence] remain entitled to an interpretation most favorable to the non-moving party." *Coble v. City of White House, Tenn.*, 634 F.3d 865, 870 (6th Cir. 2011). "In response to a properly supported summary judgment motion, the non-moving party 'is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." *Maston v. Montgomery Cnty. Jail Med. Staff Pers.*, 832 F. Supp. 2d 846, 849 (S.D. Ohio 2011) (quoting *Sixty Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)).

A fact is "material" if its resolution will affect the outcome of the lawsuit. *Beans v. City of Massillon*, No. 5:15-cv-1475, 2016 WL 7492503, at *5 (N.D. Ohio Dec. 30, 2016), *aff'd,* No. 17-3088, 2017 WL 3726755 (6th Cir. 2017) (citing *Anderson*, 477 U.S. at 248). The party who seeks summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 322. To make its determination, the court "need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). The party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968).

4

Because plaintiff is a pro se litigant, his filings are liberally construed. *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005); *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999) (pro se plaintiffs enjoy the benefit of a liberal construction of their pleadings and filings). A party's status as a pro se litigant, however, does not alter the party's duty on a summary judgment motion to support his factual assertions with admissible evidence. *Maston*, 832 F. Supp. 2d at 851-52 (citing *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010)). When opposing a motion for summary judgment, a pro se party cannot rely on allegations or denials in unsworn filings. *Id.* (citing *Viergutz*, 375 F. App'x at 485).

## II. Analysis

### A. PLRA exhaustion requirement

Exhaustion of administrative remedies "is mandatory under the [PLRA] and . . . unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). "[A] prisoner confined in any jail, prison, or other correctional facility" is barred from filing a lawsuit alleging constitutional violations under 42 U.S.C. § 1983 "or any other Federal law . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532. "A prisoner's failure to exhaust his intra-prison administrative remedies prior to filing suit 'is an affirmative defense under the PLRA.'" *Surles v. Andison*, 678 F.3d 452, 455 (6th Cir. 2012) (quoting *Jones*, 549 U.S. at 216). "[T]he failure to exhaust 'must be established by the defendants.'" *Id.* (quoting *Napier v. Laurel Cnty., Ky.*, 636 F.3d 218, 225 (6th Cir. 2011)). Thus, defendants bear the burden of proof on exhaustion. *Id.* To succeed, defendants' evidence

must satisfy their burden of persuasion, such that "no reasonable jury would be free to disbelieve it." *Id.* at 456 (quoting *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001)).

The PLRA exhaustion requirement means prisoners must carry out "proper exhaustion" of a grievance. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). To properly exhaust a claim, a prisoner must take advantage "of each step the prison holds out for resolving the claim internally" and follow the "'critical procedural rules' of the prison's grievance process to permit prison officials to review and, if necessary, correct the grievance 'on the merits' in the first instance." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010) (quoting *Woodford*, 548 U.S. at 90). "Proper exhaustion [further] demands compliance with an agency's deadlines. . . ." *Woodford*, 548 U.S. at 90. Proper exhaustion serves the necessary interest of providing "fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint." *LaFountain v. Martin*, 334 F. App'x 738, 740 (6th Cir. 2009) (citing *Bell v. Konteh*, 450 F.3d 651, 654 (6th Cir. 2006)).

Exhaustion may be excused where the grievance process is unavailable, which includes:

> (1) "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it" because it is "so opaque" or "so confusing"; and (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."

*Lamb*, 52 F.4th at 292-93 (quoting *Ross v. Blake*, 578 U.S. 632, 643-44 (2016)). In order to rely on the excuse of unavailability of the grievance process, a prisoner must first demonstrate that affirmative action was taken to comply with the prison's grievance process. *Id.* at 293 (citing *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015)).

The procedure established for resolving inmate complaints in Ohio, codified in Ohio Administrative Code § 5120-9-31, is a three-step process.[5] First, the inmate is required to file an informal complaint ("ICR" or Informal Complaint Resolution) with the direct supervisor of the staff member or department most directly responsible for the subject matter of the complaint within 14 days of the event giving rise to the complaint. Ohio Admin. Code § 5120-9-31(J)(1). Second, if the inmate is unsatisfied with the response to his informal complaint, he may file a formal grievance with the inspector of institutional services at his institution of confinement. *Id.* at § 5120-9-31(J)(2). The inspector of institutional services is required to provide a written response to the inmate's grievance within 14 calendar days of receipt of the grievance. *Id.* If the inmate is dissatisfied with the response, he may undertake the third step of the grievance process and file an appeal to the Office of the Chief Inspector of the Ohio Department of Rehabilitation and Correction (ODRC) within 14 days of the disposition of the formal grievance. *Id.* at § 5120-9-31(J)(3). Compliance with this procedure is measured against "the prison requirements, and not the PLRA. . . ." *Jones*, 549 U.S. at 218.

B. <u>Arguments</u>

1. *Original briefing*

While defendants do not concede that plaintiff complied with the letter of Ohio's grievance procedure at steps one and two (*see* Doc. 90 at PAGEID 667; Doc 116 at PAGEID 93 n.3; Doc. 125 at PAGEID 1003 n.2), their motion is premised on plaintiff's failure to comply—to any extent—with step three: appeal to the Office of the Chief Inspector of the ODRC. Defendants argue that plaintiff has not shown that he attempted to comply with step three or that

---

[5] Unless otherwise noted, "there is no meaningful difference between the[] [three] versions [of the grievance procedure in effect between the March 2019 incident at issue and plaintiff's March 2021 lawsuit], and [the Court] will cite to the current version of the Ohio Administrative Code in [its] analysis for ease of reference." *Lamb*, 52 F.4th at 293.

step three was unavailable to him. Defendants emphasize that the denial of a grievance form alone does not demonstrate the unavailability of a grievance procedure under Sixth Circuit authority.

Defendants rely on the declaration of Roger Wilson, an ODRC Deputy Chief Inspector with the Office of the Chief Inspector. (Doc. 88-1; *id.*, PAGEID 629 at ¶ 2). Inspector Wilson states that he reviewed plaintiff's extensive grievance history, including over 200 informal complaints (ICRs) and notifications of grievances (NOGs). (*Id.*, PAGEID 631 at ¶ 12 and PAGEID 633-45). Inspector Wilson states that plaintiff submitted ICRs and a NOG related to the incidents at issue. (*Id.*, PAGEID 631 at ¶ 14 and PAGEID 646-49). Inspector Wilson further states, however, that the SOCF institutional inspector disposed of the NOG related to the incidents at issue, and plaintiff did not appeal that disposition. (*Id.*, PAGEID 631 at ¶¶ 14-15 and PAGEID 651-52). Inspector Wilson states that plaintiff was advised that he could appeal the disposition at issue and was advised generally regarding grievance procedures upon arrival at ODRC facilities. (*See id.*, PAGEID 631 at ¶¶ 14, 17-18; PAGEID 651 (disposition of grievance at issue); and PAGEID 653 (plaintiff's Madison Correctional Institution (MaCI) orientation checklist)).

Plaintiff's response is submitted under penalty of perjury, and statements made under penalty of perjury may serve as an opposing affidavit sufficient to rebut a motion for summary judgment. (Doc. 96 at PAGEID 706). *See* 28 U.S.C. 1746; *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993). In it, plaintiff argues that genuine issues of material fact remain on the issue of exhaustion. Plaintiff points to a kite attached to the *Barney* and *Little* complaints, on which appears the notation: "You already have a pending Nog alleging unreported. You are Not filing a Nog on each individual." (Doc. 6 at PAGEID 172; Doc. 12 at PAGEID 265). In addition,

8

plaintiff points to his complaints in the Consolidated Cases, which he also signed under penalty of perjury.  (*See* Doc. 6 (*Barney*) at PAGIEID 183; Doc. 12 (*Little*) at PAGEID 260; and Doc. 14 (*Hill*) at PAGEID 288-89.  In particular, in the *Barney* complaint, plaintiff references being refused a grievance form by SOCF Inspector Mahlman (referencing the above-noted kite attached to the *Barney* and *Little* complaints) and states that he "was also in segregation and then transfer[red] to [MaCI] where there was only the j-pay machine, and no paper forms available."  (Doc. 6 at PAGEID 175; *see also* Pl.'s Decl.*, id.* at PAGEID 185 (same)).  Similarly, in the *Little* complaint, plaintiff again references being refused a grievance form by SOCF Inspector Mahlman (referencing the kite attached to the *Barney* and *Little* complaints) and states that he was "transfer[red] to [MaCI] and then [TOCI] and never received the result?"  (Doc. 12 at PAGEID 253; *see also* Pl.'s Decl., *id.* at PAGEID 262 (referencing refusal of grievance form, segregation, and J-Pay systems at MaCI and TOCI)).  Likewise, in the *Hill* complaint, plaintiff references his transfers to MaCI and then TOCI and their use of J-Pay systems, also concluding that he "never received the result?"  (Doc. 14 at PAGEID 286; *see also* Pl.'s Decl., *id.* at PAGEID 279 (referencing segregation and transfers to prisons using J-Pay and not paper forms)).  Plaintiff lastly argues that, notwithstanding issues related to the paper process at SOCF and J-Pay processes at MACI and TOCI, he:

> found a[n] old appeal form . . . and then attempted to comply with the third step of the grievance procedure.  . . .  Plaintiff then filed a separate grievance on the issue[]s of paper form appeal and filing appeal on j-pay machine because [I]nspector Mahlman did not provide . . . NOG[] or . . . disposition of grievance on the j-pay machine so plaintiff [could be] able and could follow up on the third step of Ohio grievance procedure, which plaintiff attempted with paper form and on j-pay machine to complete. . . .

(Doc. 96 at PAGEID 702-03). (*See also* Pl.'s Decls., Doc. 6 at PAGEID 185; Doc. 12 at

PAGEID 262; and Doc. 14 at PAGEID 279 (referencing plaintiff's separate grievance related to

the appeal procedure at TOCI (# 1219000508) (the "TOCI grievance"))).

In plaintiff's supplemental response (Doc. 102), he further explains, under penalty of

perjury (*see id.* at PAGEID 762), that he never received the disposition of his grievance by either

regular mail or J-Pay, though he did receive a regular mail notice that the disposition had been

delayed. (*See id.* at PAGEID 758-59). Plaintiff refers again to his TOCI grievance (*See id.* at

PAGEID 760).

In reply, defendants maintain that plaintiff has not demonstrated that his failure to

exhaust his claims falls within any of the three recognized exceptions to the exhaustion

requirement. As such, they argue that summary judgment is appropriate.

2. *Supplemental briefing*

In the Order vacating its prior Report and Recommendation, the Court directed the parties

to address the following questions in light of the Sixth Circuit's intervening decision in *Lamb*:

> 1. Is there a genuine issue of material fact that plaintiff made affirmative efforts to
> comply with step three of Ohio's grievance process that were sufficient under the
> circumstances?
>
> 2. Assuming that there is a genuine issue of material fact regarding question one,
> do defendants have irrefutable evidence showing that they did not make step three
> of the grievance process unavailable to plaintiff?

(Doc. 114 at PAGEID 908).

In support of their supplemental brief, defendants submit the declarations of three

institutional inspectors: Kevin M. Parker, SOCF (where plaintiff was housed until April 11,

2019); Zachary Gould, MaCI (where plaintiff was housed between April 11, 2019 and August

21, 2019); and Michael Jenkins, TOCI (where plaintiff was housed beginning on August 21,

2019 through the present). (*See* Docs. 116-1 through 116-3). In Inspector Parker's declaration (Doc. 116-1), he states that SOCF had a paper grievance system during the time period at issue; paper forms were available to prisoners on a daily, self-serve basis regardless of location— including limited privilege ("the hole"); and prisoners also had the option of requesting forms from a corrections officer or inmate porter. (*Id.*, PAGEID 939 at ¶¶ 9-10). Informal complaint and grievance forms were available to plaintiff during his SOCF incarceration. Inspector Parker states that plaintiff filed nine informal complaints between April 11, 2013 and May 13, 2019 while at SOCF. (*Id.* at ¶¶ 11-12). In addition, plaintiff filed a Notification of Grievance (NOG) to the Inspector of Institutional Services on April 11, 2019, thereby satisfying the second step of the grievance process. (*Id.* at ¶ 13). On April 11, 2019, plaintiff also was transferred to MaCI. (*Id.* at ¶ 14). On May 8, 2019, the SOCF Institutional Inspector provided a Disposition of Grievance to plaintiff denying the NOG. (*Id.* at ¶ 15).

In Inspector Gould's declaration (Doc. 116-2), he states that MaCI had kiosks for electronic grievances and "a process in place which allowed for inmates whom [sic] started the grievance process on paper to complete it on paper." (*Id.*, PAGEID 942 at ¶ 10). MaCI also had a paper kite system, which could be used to address questions regarding grievances. (*Id.* at PAGEID 942-43 at ¶ 12). Plaintiff went through orientation, had a copy of the Inmate Handbook, and was educated on the grievance process at MaCI. (*Id.*). Though plaintiff otherwise used the grievance process while at MaCI, Inspector Gould states that there is no record that he requested an appeal form, contacted the Institutional Inspector's Office regarding the appeal process, or used the paper kite or electronic grievance system to attempt to appeal the NOG at issue. (*Id.*, PAGEID 942-44 at ¶¶ 7, 15-17). Plaintiff was incarcerated at MaCI from April 11, 2019 until August 21, 2019, when he was transferred to TOCI. (*Id.* at ¶¶ 9, 18).

11

Finally, in Inspector Jenkins's declaration (Doc. 116-3), he states that TOCI:

> had both a paper process for kites and grievances, and an electronic grievance
> system and kites system. TOCI had a process in place which allowed for inmates
> whom [sic] started the grievance process on paper to complete it on paper. TOCI
> had a process in place to forward an[y] appeals to the appropriate facility.
> Inmates could obtain an appeal form from their housing unit, request one from the
> institutional inspector's office through the kites system, or request a paper form or
> assistance directly from the undersigned when I was making my regular rounds of
> the housing units multiple times per week. The appeal form was then to be
> mailed to the Chief lnspector.
>
> If an inmate was in restricted housing, he still had access to the electronic system
> a minimum of one time per week in order to utilize the electronic grievance
> process, plus he had access to the paper forms maintained on his housing unit on a
> daily basis. He also had access to me while I was making rounds multiple times
> per week. Time lines regarding the appeal process are routinely extended when
> inmates are maintained in restrictive housing[.]

(*Id.*, PAGEID 946 at ¶¶ 9-10). Plaintiff went through orientation, had a copy of the Inmate

Handbook, was educated on the grievance process at TOCI, and had access to paper and

electronic means for submitting kites and grievances during his time at TOCI. (*Id.* at ¶¶ 11-12).

TOCI records nevertheless show no record that plaintiff requested an appeal form, contacted

anyone from the Institutional Inspector's Office, or submitted any kite or grievance related to his

SOCF grievance until September 29, 2020. (*Id.*, PAGEID 947 at ¶¶ 14-17).[6]

Defendants argue in their supplemental brief that the question of whether plaintiff made

affirmative efforts to comply with step three of the grievance process pertains only to the

processes available at MaCI or TOCI, because plaintiff transferred to MaCI the same day that his

SOCF grievance was received by the SOCF institutional inspector (April 11, 2019). (*See* Doc.

88-1 at PAGEID 646; Doc. 116-1, PAGEID 939 at ¶ 14). Therefore, defendants argue that

---

[6] TOCI Inspector Jenkins states that plaintiff "mention[ed]" the SOCF grievance in the kite or grievance process on September 29, 2020—well over a year after the disposition of the SOCF grievance and approximately ten months after plaintiff initiated the TOCI grievance. (*Id.*, PAGEID 947 at ¶ 17). Inspector Jenkins does not state that this was an attempt to appeal the SOCF grievance, and plaintiff does not argue as much in his supplemental briefing.

Inspector Malham, *an SOCF employee*, could not have interfered with the step three of the grievance process. Defendants also argue that their supplemental declarations establish that restrictive housing assignments and prison transfers are contemplated by the MaCI and TOCI grievance processes and do not, in and of themselves, obstruct completion of the grievance process. Defendants argue that the declarations of the institutional inspectors demonstrate that plaintiff did not take affirmative steps to comply with step three of the grievance process that were sufficient under the circumstances. Even if the Court were to find that plaintiff nevertheless exhibited sufficient affirmative efforts to comply, defendants argue that their supporting declarations are also irrefutable evidence that they did not make step three unavailable to plaintiff.

In plaintiff's supplemental brief (Doc. 119),[7] he argues that the grievance process was unavailable to him because SOCF Inspector Mahlman denied him a grievance form. Plaintiff concedes, however, that this alleged interference related to *step two* of the grievance process. (Doc. 119 at PAGEID 959 ("Inspector, Ms. Mahlman, denied plaintiff . . . a grievance form at the second stage of the Ohio grievance process.")). In any event, plaintiff actually filed a NOG form with the SOCF Institutional Inspector on April 11, 2019. (Doc. 88-1 at PAGEID 646). Plaintiff also references his transfer to MaCI and assignment to segregated housing without elaboration. (*Id.* at 960). Plaintiff states that he never received the May 8, 2019 disposition of his SOCF grievance (*See* Doc. 88-1 at PAGEID 651), but he acknowledges that he received an earlier notice that disposition would be delayed (*see id.* at PAGEID 650). (Doc. 119 at PAGEID 961). Finally, plaintiff references his TOCI grievance but does not attach it. Plaintiff also does

---

[7] While plaintiff's signature appears above his 28 U.S.C. § 746 statement, it is on the same page, and the Court finds that it substantially complies with the statute. *See* 28 U.S.C. § 1746 (statement must conform "substantially" to that which is provided in the statute).

13

not attach the disposition thereof but summarizes it as follows: "you state you were sending appeals to the Chief Inspector Office, be advised that those appeals would not have been accepted or processed as all appeals must be first process[ed] electronically on j-pay." (Doc. 119 at PAGEID 967). Plaintiff states that the TOCI grievance process took place in December of 2019. (*Id.*).

Plaintiff's second supplemental brief is captioned as "Declaration of Michael L. Johnson," but it is not signed by plaintiff and therefore does not substantially comply with 28 U.S.C. § 1746. (Doc. 122 at PAGEID 994). *See Pollock v. Pollock*, 154 F.3d 601, 612 n.20 (6th Cir. 1998) ("[A]n unsworn declaration [may] substitute for a conventional affidavit if the statement contained in the declaration is made under penalty of perjury, certified as true and correct, dated, *and signed*.") (emphasis added). Plaintiff accuses TOCI Inspector Jenkins of perjury in paragraphs 8, 14, 15, 16, and 17 of his declaration (where Inspector Jenkins states that he reviewed plaintiff's grievance/kite history at TOCI and saw no evidence of any attempted appeal regarding the SOCF grievance). (Doc. 122 at PAGEID 990-91, referring to Doc. 116-3 at PAGEID 946-47). As the basis for this accusation, plaintiff refers again to his TOCI grievance. Plaintiff also states that Inspector Jenkins "honored" his kite request for a copy of his TOCI grievance on August 19, 2022, but plaintiff still fails to attach it or any other supporting documentation. (*Id.*). Because plaintiff did not sign his second supplemental brief, the Court cannot rely on the allegations therein in its decision on defendants' summary judgment motion. *See* Fed. R. Civ. P. 56(c), (e); *Maston*, 832 F. Supp. 2d at 851-52 (citing *Viergutz*, 375 F. App'x at 485) (plaintiff may not rely on allegations in unsworn filings to defeat summary judgment).

Defendants' reply focuses on plaintiff's allegations regarding Inspector Mahlman, an SOCF employee, which they argue are irrelevant to his affirmative efforts to comply with step

three of the grievance process.  Defendants reason that plaintiff's obligation to appeal his SOCF grievance disposition did not even ripen until May 8, 2019 (or even later if, as plaintiff alleges, he never received it)—at which point plaintiff had already transferred to MaCI.  As such, it is not a reasonable to conclude that SOCF Inspector Mahlman could have interfered with step three of the grievance process.

C. <u>Decision</u>

The Court first addresses several threshold issues.  First, defendants' motion is premised on step three of the grievance procedure only.  (Doc. 90 at PAGEID 662 ("Because Plaintiff did not comply with the third and final step of the three-step grievance procedure . . . , he failed to exhaust any and all administrative remedies. . . .  In turn, . . . he is barred from proceeding with this civil action. . . .).  Defendants do not challenge plaintiff's compliance with the other two steps for purposes of this motion.[8]

Second, to the extent plaintiff implies that his failure to receive the disposition of his SOCF grievance excused his performance at step three, this argument is without merit.  Ohio Administrative Code § 5120-9-31(J)(2) (eff. April 5, 2019) provides, "[i]f a disposition has not been rendered after a total of twenty-eight days from the receipt of the grievance, the complaint will be deemed unresolved and the inmate may proceed to step three of the process."[9]  Plaintiff's grievance was received by the SOCF institutional inspector's office on April 11, 2019 (Doc. 88-1

---

[8] While plaintiff references alleged interference at step two of the grievance process by SOCF Inspector Mahlman, he elsewhere admits that he received notice that the disposition of his grievance would be delayed.  (*See* Doc. 102 at PAGEID 759).

[9] In *Lamb*, the Sixth Circuit held that it was "irrelevant whether [the prisoner] made affirmative efforts to file an appeal with the chief inspector because 'inmates are foreclosed from proceeding to step three until they receive a response to their step two grievance.'"  52 F.4th at 298 (quoting *Troche v. Crabtree*, 814 F.3d 795, 800-01 (6th Cir. 2016)).  It was undisputed in *Lamb*, however, that the plaintiff had never filed a NOG. *Id.* at 297.  In addition, *Troche* relied on a prior version of the Ohio Administrative Code, which has since been amended to provide for an appeal notwithstanding the failure to receive a response at step two of the grievance procedure.  Ohio Admin. Code § 5120-9-31(J)(2).

at PAGEID 646)—the same day plaintiff transferred from SOCF to MaCI (Doc. 116-1, PAGEID 939, at ¶¶ 13-14).  Therefore, plaintiff was entitled to file an appeal of his grievance starting May 10, 2019 if he did not receive the disposition thereof.

Finally, plaintiff has alleged that he was prevented from completing step three of the grievance process—thereby triggering plaintiff's obligation to show that he made "affirmative efforts" to comply that were "sufficient under the circumstances":

> Even if an inmate has evidence to show that an administrative procedure was unavailable, he is not automatically absolved from the PLRA's exhaustion requirement because this Circuit requires inmates to make "affirmative efforts to comply with the administrative procedures before analyzing whether the facility rendered these remedies unavailable." [*Lee*, 789 F.3d at 677] (quoting [*Napier*, 636 F.3d at 223]).  "When a prisoner makes affirmative efforts to comply but does not succeed, we analyze whether those efforts to exhaust were sufficient under the circumstances." *Id.* (quoting [*Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011)]) (internal quotation marks omitted).

*Lamb*, 52 F.4th at 293.  *See Surles*, 678 F.3d at 457 n.10 ("Only if the plaintiff contends that he was prevented from exhausting his remedies must the defendant present evidence showing that the plaintiff's ability to exhaust was not hindered.").

Given the foregoing, the disposition of defendants' motion turns on whether plaintiff has raised a genuine issue of material fact as to whether he made "affirmative efforts" to comply with the third step of the grievance procedure that were "sufficient under the circumstances." *Lamb*, 52 F.4th at 293.  In particular, the Court must evaluate whether plaintiff's uncorroborated statements made under penalty of perjury are sufficiently specific to constitute competent summary judgment evidence.  Only if so is the Court required to determine whether defendants' evidence irrefutably shows that they did not make the grievance process unavailable to plaintiff.

The Sixth Circuit requires an affidavit to contain a certain baseline level of specificity. *See, e.g.*, *Pierce v. Rowland*, No. 20-5731, 2021 WL 3929549, at *4 (6th Cir. Sept. 2, 2021)

(citing *Revis v. Meldrum*, 489 F.3d 273, 287-88 (6th Cir. 2007)) ("[A] plaintiff cannot create a fact dispute by submitting an affidavit chock full of conclusory allegations."); *Chambers v. Hardy*, No. 19-5201, 2019 WL 8138590, at *4 (6th Cir. Oct. 30, 2019) (inmate's statements that he "attempted to exhaust" his administrative remedy and "filed a BP-11 and never heard any response on it" were "vague and unsupported by specific facts" necessary to defeat an otherwise proper summary judgment motion); *Belser v. James,* No. 16-2578, 2017 WL 5479595, at *2 (6th Cir. June 6, 2017) (inmate's statements that a grievance coordinator "would not process none of the grievances" and "came to [the inmate's] cell and told [him] to sign off on the grievance and that nothing was going to be done[;]" that he received "no response" from the grievance coordinator after "several kites[;]" and that the grievance coordinator "would not process or give an identifier number for some of the grievances" were too "generalized" to create a genuine issue of material fact).

Nevertheless, it is a highly case-specific inquiry. In *Lamb*, the Sixth Circuit considered whether a prisoner's affidavit raised a genuine issue of material fact regarding the sufficiency of his affirmative efforts to comply with the grievance process. 52 F.4th at 293. Lamb alleged that he had been "brutally beat and pepper sprayed . . . while he was handcuffed, immediately placed . . . in solitary confinement, and prevented . . . from accessing the requisite grievance forms to report the incident properly." *Id.* at 289.

With respect to step one, Lamb alleged that he had filed three ICRs regarding the use of force. *Id.* at 289-90. The defendants admitted receiving the first but argued that it was not sufficiently specific as to the personnel involved. *Id.* at 295-96 (citing Ohio Admin. Code § 5120-9-31(J)). Lamb stated in his affidavit that he filed a second ICR "about the use of force in approx. 4/2018[,]" of which the defendants did not have a record. *Id.* at 296 (quoting Lamb's

affidavit).  The Court declined to consider Lamb's third alleged ICR because it was undisputed

that it was untimely and "well settled that '[a] prisoner must adhere to any time limitations that

are part of the institutional grievance policy.'"  *Id.* at 296 n.4 (quoting *Surles*, 678 F.3d at 455).

The *Lamb* court concluded that Lamb's first ICR was an affirmative effort to comply

with step one of the grievance process that was sufficient under the circumstances because the

alleged beating interfered with his eyesight and, consequently, his ability to specifically identify

the officers involved.  *Id.* at 296.  In addition, the court concluded that Lamb's affidavit—stating

that he had filed a second ICR "about the use of force in approx. 4/2018"—also created a

genuine issue of material fact on his compliance with the first step of the grievance procedure.

*Id.*

Though a closer call, the *Lamb* court also found that the plaintiff's affidavit raised a

genuine issue of material fact regarding whether his affirmative efforts to comply with step two

of the grievance procedure were sufficient under the circumstances.  *Id.* at 296-97.  The *Lamb*

court summarized the relevant evidence as follows:

> According to Lamb's affidavit, the ODRC transferred him to LeCI immediately
> after the April 6, 2018 incident and placed him in restrictive housing, where he
> did not have access to the prison's JPay system or forms for filing a proper
> notification of grievance or appeal.  He instead relied solely on correctional
> officers at LeCI to provide him the necessary grievance forms.  Grievance officer
> Bullock agreed that inmates in restrictive housing may access exhaustion forms
> by request and that prison officials should provide forms to inmates without
> delay.  However, despite the consensus about how the grievance process should
> ideally work, Lamb's affidavit states that correctional officers denied his repeated
> requests for grievance forms and told him that the prison did not have any
> available.  Lamb even identified Inspector Austin by name and asserts that she
> misleadingly advised him that it would be a waste of time to appeal his informal
> complaint because the deadline had passed.

*Id.* at 297.

The *Lamb* court found that Lamb's affidavit included "specific facts about why he relied solely on LeCI correctional officers for step two grievance forms and how those officers, including Inspector Austin, repeatedly prevented him from exhausting his remedies by refusing to provide those forms upon request." *Id.* at 298.[10] The *Lamb* court concluded that the defendants did not carry their burden on the exhaustion affirmative defense because they had not:

> presented any evidence, let alone any irrefutable evidence, demonstrating that prison officials did in fact provide Lamb with grievance forms when he requested them. Defendants' sole evidence in the form of competing declarations—none of which came from Inspector Austin or another officer that spoke to Lamb about his grievance—describes the grievance process in general and how it should work, but those declarations do not demonstrate the absence of a factual dispute regarding whether proper grievance forms were made available to Lamb "on certain occasions or as to particular claims." *Surles*, 678 F.3d at 457-58. As a result, we do not find that defendants presented significant probative evidence "so powerful that no reasonable jury would be free to disbelieve" Lamb's allegations that his administrative remedies were unavailable. [*Cockrel*, 270 F.3d at 1056] (citation omitted). Therefore, defendants were not entitled to summary judgment on the issue of exhaustion.

*Id.* at 298. Thus, the *Lamb* decision appears to have turned on the alleged facts that (1) the interference with the grievance process occurred while the plaintiff was in restrictive housing and did not have access to J-Pay or paper forms, (2) the plaintiff made *multiple* requests for grievance forms, and (3) Lamb identified a *particular* officer that thwarted the grievance process.

With this in mind, the Court turns to plaintiff's evidence regarding his affirmative efforts to comply with step three of the grievance procedure. As an initial matter, any allegation by plaintiff that SOCF Inspector Mahlman interfered with *step three* of the grievance procedure is

---

[10] The *Lamb* court also dismissed the defendants' argument that the plaintiff's opportunity to escalate his ICR had expired prior to the time any interference by Inspector Austin occurred. *Id.* at 297 n.5. The *Lamb* court reasoned that the defendants failed to take into account that "[t]he inspector of institutional services may . . . waive the timeframe for the filing of the notification of grievance, for good cause[,]" which left the timing of Lamb's step-two efforts an issue of fact. *Id.* (quoting Ohio Admin. Code § 5120-9-31(J)(2)).

not well-taken.[11]  Such an allegation is inconsistent with plaintiff's own representations to the Court.  (*See* Doc. 119 at PAGEID 959 ("Inspector, Ms. Mahlman, denied plaintiff . . . a grievance form at the *second stage* of the Ohio grievance process.") (emphasis added)).  It is also contradicted by the record.  Plaintiff transferred to MaCI the same day that his SOCF grievance was received by the SOCF institutional inspector (April 11, 2019).  (*See* Doc. 88-1 at PAGEID 646 (NOG form signed by plaintiff on April 8, 2019 and received by SOCF Inspector on April 11, 2019); Doc. 116-1, PAGEID 939 at ¶¶ 13-14).  As such, the third step of the grievance process was not triggered until after plaintiff left SOCF, where Inspector Mahlman worked.  *See Scott*, 550 U.S. at 380.

Otherwise, plaintiff has made statements under penalty of perjury that he (1) attempted to file an appeal of his SOCF grievance using paper (Doc. 96 at PAGEID 702-03), (2) attempted to file an appeal of his SOCF grievance using J-Pay (*id.* at PAGEID 703), and (3) filed the TOCI grievance (*see, e.g., id.* at PAGEID 702-03; Doc. 119 at PAGEID 967).  Plaintiff alleges that he "attempted" to file an appeal, but he does not state exactly when, where, or how he attempted these SOCF grievance appeals, provide copies of related paperwork, or otherwise elaborate on why he was unable to carry out his SOCF grievance appeal via paper.  Unlike in *Lamb*, plaintiff does not allege that he asked for appeal forms and prison officials failed to provide the forms while plaintiff was in restrictive housing at MaCI or TOCI.  Plaintiff also does not identify any particular correctional staff members involved in these appeal "attempts"—let alone any interference by such persons in plaintiff's "attempts" to file an appeal.

---

[11] While defendants have do not challenge steps one and two of the grievance process for purposes of their motion, the Court notes that any allegations by plaintiff regarding interference at step two of the grievance process are likewise inconsistent with his own representations to the Court.  (*See* Doc. 102 at PAGEID 759) (plaintiff's signed allegation, under penalty of perjury, that he received notice that the disposition of his SOCF grievance was delayed)).

Defendants, on the other hand, have supplemented the record with evidence demonstrating that plaintiff had myriad opportunities at both MaCI and TOCI—notwithstanding his transfers or housing assignments—to appeal his SOCF grievance.  In particular, both institutions had ways for grievances initiated on paper to be completed on paper.  (Gould Decl., Doc. 116-2, PAGEID 942 at ¶ 10; Jenkins Decl., Doc. 116-3, PAGEID 946 at ¶ 9).  *Cf. Napier*, 636 F.3d at 223 (holding that "[t]he transfer of a prisoner from one facility to another does not render the grievance procedures at the transferor facility 'unavailable' for purposes of exhaustion.") (quoting *Blakey v. Beckstrom*, No. 06-163, 2007 WL 204005, at *2 (E.D. Ky. Jan. 24, 2007)) (further observing that a transferred prisoner could attempt to carry out the paper grievance procedures of a transferor facility).

The Court concludes that plaintiff's statements under penalty of perjury regarding his "attempts" to file paper and J-Pay appeals of his SOCF grievance are not sufficiently specific, on their own, to raise a genuine issue of fact regarding whether his affirmative efforts to comply with step three of the grievance process were sufficient under the circumstances.  In contrast to the inmate in *Lamb*, plaintiff offers no factual context for his alleged paper and J-Pay appeal attempts, such as approximately when or where they occurred or the correctional staff involved.  Plaintiff's threadbare allegations in this respect simply do not constitute competent summary judgment evidence of plaintiff's affirmative efforts to comply with step three of the grievance process.[12]

---

[12] Where a plaintiff alleges the unavailability of exhaustion, defendants face the difficult position of proving a negative: that they did not make exhaustion unavailable.  Requiring prison officials to do so without first requiring plaintiffs to at least identify an approximate timeframe, particular individual(s), or other identifying characteristic related to their efforts would be, as a practical matter, untenable.  The court in *Lamb* implicitly acknowledged as much—observing that the defendants' exhaustion burden is measured relative to their conduct "on certain occasions or as to particular claims."  *Lamb*, 52 F.4th at 298 (quoting *Surles*, 678 F.3d at 457-58).

This leaves the question of whether plaintiff's TOCI grievance—a grievance that defendants acknowledge and do not specifically refute (*see* Doc. 101 at PAGEID 751)—alters the Court's conclusion. In his supplemental briefing, plaintiff alleges that he initiated the TOCI grievance in December 2019. (Doc. 119 at PAGEID 967). Plaintiff then alleges that he filed an appeal of the TOCI grievance, which "K. Riehle" answered by stating that appeals had to be filed on J-Pay. (*Id.*).

Plaintiff has not provided the Court with a copy of the TOCI grievance and disposition thereof. More importantly, however, plaintiff has failed to provide *any detail regarding the subject matter of the underlying grievance*, other than it relating to "the issue[]s of paper form appeal and filing appeal on j-pay. . . ." (Dc. 96 at PAGEID 702). The mere existence of a TOCI grievance related to the appeal process, generally, does not raise a genuine issue of material fact regarding whether plaintiff took affirmative efforts to comply with step three of the grievance procedure—*as related to the SOCF grievance at issue*—that were sufficient under the circumstances. As such, it is unnecessary to determine whether defendants have presented irrefutable evidence showing that they did not make step three of the grievance process unavailable to plaintiff. *Lamb*, 52 F.4th at 293 (citing *Lee*, 789 F.3d at 677) (courts are to analyze a prisoner's "affirmative efforts" prior to analyzing whether a facility rendered remedies unavailable).

Given this conclusion, defendants have otherwise put forth evidence sufficient to meet their burden of persuasion that plaintiff did not comply with step three of the grievance process. The institutional inspectors from SOCF, MaCI, and TOCI each submitted declarations stating that plaintiff had been oriented regarding the grievance process at each institution, that plaintiff had in fact used the grievance process at each institution, and—in particular—that MaCI and

TOCI each "had a process in place which allowed for inmates who[] started the grievance process on paper to complete it on paper." (Doc. 116-2, PAGEID 942 at ¶ 10; Doc. 116-3, PAGEID 946 at ¶ 9). Nevertheless, none of these institutional inspectors have a record of an appeal of (or attempt to appeal) the SOCF grievance at issue. (Doc. 116-1, PAGEID 940 at ¶ 16; Doc. 116-2, PAGEID 944 at ¶¶ 15-17; and Doc. 116-3, PAGEID 947 at ¶¶ 14-17).

**IT IS THEREFORE RECOMMENDED THAT**:

(1) Defendants' motion for summary judgment (Doc. 90) be **GRANTED**;

(2) The Court certify pursuant to 28 U.S.C. § 1915(a)(3) that for the foregoing reasons an appeal of any Court Order adopting this Report and Recommendation would not be taken in good faith. *See McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).

Date: 2/27/2023

Karen L. Litkovitz
United States Magistrate Judge

23

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

MICHAEL L. JOHNSON,                                  Case No. 1:21-cv-141
     Plaintiff,                                   Hopkins, J.
                                              Litkovitz, M.J.

     vs.

BRIAN BARNEY, et al.,
     Defendants.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), WITHIN 14 DAYS after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.  This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections WITHIN 14 DAYS after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).