# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| **Michael L. Johnson,** | : | |
| | : | **Case No. 1:21-cv-00141** |
| **Plaintiff,** | : | |
| | : | **Judge McFarland** |
| **v.** | : | |
| | : | **Magistrate Judge Litkovitz** |
| **Brian Barney, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## DEFENDANTS' AND INTERESTED PARTY, STATE OF OHIO'S MOTION FOR SUMMARY JUDGMENT

NOW COME the Interested Party, State of Ohio, and Defendants, Brian Barney, Jason Joseph, Scott Spriggs, Garth Fri, Robert Setty, Kristal Little, Jeremy Eaches, Lauren Hart, Teresa Hill and Interested Party State of Ohio[1] ("Defendants"), by and through counsel, and respectfully move for summary judgment pursuant to Federal Rule of Civil Procedure 56(a). A Memorandum in Support of this Motion is attached.

---

[1] Under R.C. § 109.361, the Ohio Attorney General may appear in any civil action in order to protect the interest of the State even though no request for appearance has been made by the officer or employee. Such appearance does not waive personal service and any defenses available at law. … This constitutes the State's interest.

Respectfully submitted,

DAVE YOST
Ohio Attorney General


/s/ Marcy A. Vonderwell
MARCY A. VONDERWELL (0078311)*
  *Lead Counsel
D. CHADD MCKITRICK (0073750)
Senior Assistant Attorney General
Criminal Justice Section
Corrections Litigation Unit
30 E. Broad Street, 23rd Floor
Columbus, Ohio 43215
(614) 644-7233/Fax: (866) 521-9902
Marcy.Vonderwell@OhioAGO.gov
Daniel.McKitrick@OhioAGO.gov

*Counsel for Defendants*

ii

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... iii

MEMORANDUM IN SUPPORT ............................................................................................1

I.  Procedural History ......................................................................................................3

    A.  *Johnson v. Barney, et al.*, S.D. Ohio Case No. 1:21-cv-141 (Hopkins, J.) .............3

        1.  Facts as alleged by Plaintiff ..............................................................................3

        2.  Facts as alleged by Defendants .........................................................................4

    B.  *Johnson v. Hill, et al.*, S.D. Ohio Case No. 1:21-cv-155 (McFarland, J.) ..............7

    C.  *Johnson v. Little, et al.*, S.D. Ohio Case No. 1:21-cv-171 (McFarland, J.) ...........8

II.  Law and Argument .....................................................................................................9

    A.  Standard of Review: Fed. R. Civ. P. 56(a) ..............................................................9

    B.  Section 1983 Claim ...............................................................................................11

    C.  Plaintiff's claims against Defendants in their official capacities are barred by Ohio's sovereign immunity ...................................................................................12

    D.  Statute of Limitations bars the allegations in *Hill* and *Little* ...............................12

    E.  Defendants Barney, Joseph, and Spriggs did not use excessive force .................13

        i.  Plaintiff cannot satisfy the objective element of an Excessive Force claim because the force used was reasonable  under the circumstances .................15

        ii.  Plaintiff cannot satisfy the subjective element of an Excessive Force claim because Defendants acted in good faith to maintain order and not for the purpose of causing harm ...............................................................................16

    F.  *Heck* and the "Favorable Termination Rule" .......................................................18

    G.  Defendants are entitled to qualified immunity .......................................................21

III.  CONCLUSION ........................................................................................................24

CERTIFICATE OF SERVICE .............................................................................................26

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adickes v. S.H. Kress & Co.*,
398 U.S. 144 (1970) ...................................................................................................................9

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ...................................................................................... 9, 10, 11

*Armstrong v. Fowler*,
No.1:07 CV 3662, 2008 U.S. Dist. LEXIS 10225 (N.D. Ohio Feb. 12, 2008) ....................12

*Ashcroft v. Al-Kidd*,
563 U.S. 731 (2011) .................................................................................................23

*Bailey v. Golladay*,
421 F.App'x 579 (6th Cir.2011) .......................................................................... 16, 24

*Baker v. McCollan*,
443 U.S. 137 (1979) .................................................................................................11

*Bartnick v. Carr*,
W.D.Mich. No. 1:23-cv-1346, 2025 U.S. Dist. LEXIS 135549 (June 9, 2025).....................17

*Bell v. City of Southfield*,
37 F.4th 362 (6th Cir. 2022) ....................................................................................23

*Bell v. Wilkinson*,
145 F. App'x 169 (6th Cir. 2005) ..............................................................................20

*Britenriker v. Mock*,
No. 3:08-cv-1890, 2009 U.S. Dist. LEXIS 66478, 2009 WL 2392917 (N.D.
Ohio July 31, 2009)..................................................................................................10

*Browning v. Pendleton*,
869 F.2d 989 (6th Cir. Ohio 1989) (en banc) ............................................................12

*Bullocks v. Hale,* 2019 U.S. Dist. LEXIS 86674, *adopted*, 478 F. Supp. 3d at 642
(S.D. Ohio 2020)......................................................................................................16

*Caldwell v. Moore*,
968 F.2d 595 (6th Cir. 1992) .............................................................................. 14, 15

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) .................................................................................................10

iv

*Chappell v. City of Cleveland*,
   585 F.3d 901 (6th Cir. 2009) ...................................................................................11

*Coley v. Lucas County*,
   799 F.3d 530 (6th Cir. 2015) ...................................................................................23

*Combs v. Wilkinson*,
   315 F.3d 548 (6th Cir. 2002) ............................................................................. 13, 14

*Cooey v. Strickland*,
   544 F.3d 588 (6th Cir. Ohio 2008) ..................................................................... 12, 13

*Cornwall v. Dahlberg*,
   963 F.2d 912 (6th Cir. 1992) ...................................................................................13

*Deaton v. Montgomery Cty.*,
   989 F.2d 885 (6th Cir.1993) ....................................................................................12

*Denham v. Shroad*,
   56 F. App'x 692 (6th Cir. 2003) ...............................................................................20

*Edwards v. Balisok*,
   520 U.S. 641 (1997) .................................................................................................19

*EEOC v. Ford Motor Corp.*,
   782 F.3d 753 (6th Cir. 2015) (en banc) ...................................................................11

*Erickson v. Gogebic County*,
   133 F.4th 703 (6th Cir. 2025) ..................................................................................23

*Evans v. Techs. Application & Serv. Co.*,
   80 F.3d 954 (4th Cir. 1994) .....................................................................................10

*Fulson v. Columbus*,
   801 F. Supp. 1 (S.D. Ohio 1992) .............................................................................10

*Graham v. Connor*,
   490 U.S. 386, 394; 109 S.Ct.1865 (1989); ..............................................................11

*Harlow v. Fitzgerald*,
   457 U.S. 800 (1982) .................................................................................................21

*Heck v. Humphrey*,
   512 U.S. 477 (1994) ....................................................................................... 18, 19, 21

*Howse v. Hodous*,
   953 F.3d 402 (6th Cir. 2020) ...................................................................................23

v

*Hudson v. McMillian*,
  503 U.S. 1 (1992) ........................................................................ 14, 15, 16, 18

*Hunter v. Bryant*,
  502 U.S. 224 (1991) .............................................................................................22

*Hunter v. Ervin*,
  No. 1:19-cv-204, 2020 U.S. Dist. LEXIS 95564 (S.D. Ohio May 31, 2020)........................16

*Jennings v. Mitchell*,
  93 F. App'x 723 (6th Cir. 2004) ...........................................................................19

*Johnson v. Barney et al*,
  Case No. 1:21-cv-00141 ................................................................................ 1, 3, 8

*Johnson v. Barney, et al.*,
  S.D. Ohio Case No. 1:21-cv-141 (Hopkins, J.) ...................................................3, 9

*Johnson v. Glick*,
  481 F.2d 1028 (2d Cir. 1973)...............................................................................14

*Johnson v. Hill, et al.*,
  Case No. 1:21-cv-155 ................................................................................ 1, 4, 8, 12

*Johnson v. Hill, et al.*,
  S.D. Ohio Case No. 1:21-cv-155 (McFarland, J.)..........................................................7, 24

*Johnson v. Little, et al.*,
  Case No. 1:21-cv-171 .................................................................................*passim*

*Johnson v. Little, et al.*,
  S.D. Ohio Case No. 1:21-cv-171 (McFarland, J.)..........................................................8, 25

*Johnson v. Moseley*,
  790 F.3d 649 (6th Cir. 2015) ...............................................................................22

*Jones v. Clark County*,
  959 F.3d 748 (6th Cir. 2020) ...............................................................................23

*Kendall v. Hoover Co.*,
  751 F.2d 171 (6th Cir. 1984) ...............................................................................10

*Lamb v. Kendrick*,
  52 F.4th 286 (6th Cir. 2022) .................................................................................2

*Malley v. Briggs*,
  475 U.S. 335 (1986) ...........................................................................................21

vi

*Manning v. Petiniot*,
   2025 U.S. Dist. LEXIS 167521, 2025 WL 2481009 .......................................................... 12

*Muhammad v. Close*,
   540 U.S. 749 (2004) ...................................................................................................... 19

*Mullenix v. Luna*,
   577 U.S. 7 (2015)(per curiam) ................................................................................. 22, 23

*Orange v. Ellis*,
   348 F. App'x 69 (5th Cir. 2009) .................................................................................... 19

*Parris v. Johnson*,
   800 F.2d 600 (6th Cir. 1986) ........................................................................................ 13

*Pearson v. Callahan*,
   555 U.S. 223 (2009) ...................................................................................................... 22

*Rhodes v. Chapman*,
   452 U.S. 337 (1981) ...................................................................................................... 13

*Richmond v. Settles*,
   450 F. App'x 448 (6th Cir. 2011) ................................................................................. 15

*Scott v. Harris*,
   550 U.S. 372 (2007) ...................................................................................................... 11

*Simescu v. Emmet County Dep't of Soc. Services*,
   942 F.2d 372 (6th Cir. 1991) ........................................................................................ 11

*Street v. J.C. Bradford & Co.*,
   886 F.2d 1472 (6th Cir. 1989) ...................................................................................... 10

*WCI, Inc. v. Ohio Dep't of Pub. Safety*,
   18 F.4th 509 (6th Cir. 2021) ......................................................................................... 12

*West v. Atkins*,
   487 U.S. 42 (1988) ........................................................................................................ 11

*White v. Turfway Park Racing Ass'n.*,
   909 F.2d 941 (6th Cir. 1990) ........................................................................................... 9

*Whitley v. Ablers*,
   475 U.S. 312, 105 S.Ct. 1078 (1986) .......................................................... 13, 14, 15, 16

*Williams v. Curtin*,
   631 F.3d 380 (6th Cir.2011) ......................................................................................... 15

**Statutes, Codes & Rules**

28 U.S.C. § 1915.......................................................................................................... 1, 4, 8, 9

28 U.S.C. § 1983.................................................................................................*passim*

Fed. R. Civ. P. 56...............................................................................................................9

Ohio Adm. Code 5120-9-01 ...........................................................................................21

Prison Litigation Reform Act, 42 U.S.C. § 1997e...........................................................1

**MEMORANDUM IN SUPPORT**

## I.      Procedural History

Michael L. Johnson ( "Plaintiff") is an inmate in the custody of the Ohio Department of Rehabilitation and Correction ("ODRC") and currently housed at Southern Ohio Correctional Facility ("SOCF"). In 2021, Plaintiff brought a consolidated prisoner civil rights action under 42. U.S.C. § 1983 against multiple SOCF correctional officers, medical staff, and employees. The litigation history has been well documented by this Court, therefore, only an abbreviated procedural and factual history will be provided.

On December 16, 2021, the District Court issued an Order [Doc. 27], consolidating *Johnson v. Barney et al,* Case No. 1:21-cv-00141 ("*Barney*") with *Johnson v. Little, et al.*, Case No. 1:21-cv-171 ("*Little*"), and *Johnson v. Hill, et al.*, Case No. 1:21-cv-155 ("*Hill*")(collectively referenced as "Consolidated Cases"). [*See* Doc. 13, 15]. On April 7, 2021, the District Court conducted an initial screening of the *Barney* Complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i) and 1915A(b)(1) and determined that Plaintiff could proceed with his Eighth Amendment excessive use of force claims against Defendants Barney, Joseph, and Spriggs, while his remaining claims should be dismissed. (*Id.*). The Report and Recommendation was adopted on May 24, 2021. [Doc. 11]. The dismissal of the remaining defendants was not contested in the appeal. Thereafter, on December 16, 2021, this matter was consolidated with *Johnson v. Little*, et al., Case No. 1:21-cv-171, and *Johnson v. Hill, et al*., Case No. 1:21-cv-155. [Doc. 27].

On August 11, 2022, Defendants filed a Motion for Summary Judgment, which was premised solely on whether Johnson exhausted his administrative remedies as required under the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e. [Doc. 90]. Johnson filed his Opposition on September 19, 2022. [Doc. 96). Defendants filed their Reply on September 28, 2022 [Doc.

1

101]. On October 25, 2022, the trial court's Magistrate Judge issued a Report and Recommendation granting Defendants' Motion for Summary Judgment. [Doc. 103]. On November 16, 2022, Johnson filed his objections to the Report and Recommendation [Doc. 107]. On November 30, 2022, the Court vacated the Report and Recommendation and directed the parties to submit additional briefing in light of *Lamb v. Kendrick,* 52 F.4th 286, 293 (6th Cir. 2022). [Doc. 114].

On December 20, 2022, Defendants filed their Supplemental Memorandum in Support of their First Motion for Summary Judgment. [Doc. 116]. On January 9, 2023, Johnson filed his Supplement. [Doc. 122]. The Magistrate Judge issued an updated Report and Recommendation recommending that summary judgment be granted. [Doc. 126]. Johnson filed objections [Doc. 134]. Defendants filed their Response. [Doc. 138]. The trial court overruled Johnson's Objections, adopted the Magistrate Judge's Supplemental Report and Recommendation and granted summary judgment in favor of the Defendants. [Doc. 144].

On April 3, 2024, Johnson filed his Notice of Appeal.[2] Both Plaintiff and Defendants filed briefs and on January 17, 2025, the Sixth Circuit vacated the District Court's Judgment and remanded the matter. [Doc. 157]. On February 19, 2025, this Court vacated their previous Order and set a discovery and dispositive motions' deadline. [Doc. 158]. Discovery closed on August 22, 2025. (*Id.*)

---

[2] The appeal was initially dismissed for want of prosecution, then reinstated.

2

A.      *Johnson v. Barney, et al.*, **S.D. Ohio Case No. 1:21-cv-141 (Hopkins, J.)**[3]

1. *Facts as alleged by Plaintiff*

Plaintiff initially brought suit against Brian Barney, Jason Joseph, William Cool (terminated 05/24/2021), Officer Spriggs, David McCroskey (terminated 05/24/2021), John Doe (terminated 05/24/2021), G. Fri, Lt. Setty, Lt Little, Lt. Eaches, Case Manager Michael Rush (terminated 05/24/2021 and 02/16/2024), Jane Doe Nurse; Nurse John Doe, Doctor John Doe, Laura Hart, J Neff (terminated 02/16/2024); and Teresa Hill regarding alleged violations related to an attack by various ODRC employees which took place on March 13, 2019, while he was an inmate at SOCF. [Docket].

Plaintiff alleges that while he was standing in the shower, cuffed up, Defendant Barney entered the block, insulted him, and then walked into Plaintiff's cell and took his commissary. [Doc. 6, PageID 177]. Plaintiff alleges Defendant Barney then exited his cell, and sprayed Plaintiff with OC spray while Defendant Spriggs was in the control booth. [*Id.*] Plaintiff alleges that Defendant Joseph then approached Plaintiff with a use of force form, insulted Plaintiff while Defendant Barney was standing there, and then "ran inside of the shower" with Defendants Barney and Spriggs and "attacked" Plaintiff in the shower while Plaintiff remained hand cuffed. [*Id.* at PageID 179]. Officer Neff and Defendant Fri arrived, grabbed Plaintiff and escorted him to the infirmary. Plaintiff alleges that during the escort, Officer Neff threatened to knock his teeth out. [*Id.*].

Plaintiff claims that once they arrived at the infirmary, Officer Neff and Defendant Fri received permission from a supervisor, Defendant Little, to attack Plaintiff while Defendant Little watched. [*Id.*]. Plaintiff claims that "Lt. Setty walked into the medical room when the officer

---

[3] Unless otherwise noted, document numbers referenced herein refer to the docket for Case No. 1:21-cv-141, also known as "*Barney*".

started attacking me." [*Id.*]. Defendant Eaches was alleged to have entered the room, document the injuries, and watch the officers continue to attack Plaintiff. Unidentified medical personnel were then alleged to enter the room and also watch the officers continue to attack Plaintiff and falsely marked the medical record as "refused." [*Id.*]. Thereafter Officer Neff escorted Plaintiff back to his cell in J1#1 while Defendant Eaches followed.

On April 7, 2021, the District Court conducted an initial screening of the Complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i) and 1915A(b)(1) and determined that Johnson could proceed with his Eighth Amendment excessive use of force claims against Defendants Barney, Joseph, and Spriggs, while his remaining claims should be dismissed. [Doc. 7]. The Report and Recommendation was adopted on May 24, 2021. [Doc. 11]. Thereafter, on December 16, 2021, this matter was consolidated with *Johnson v. Little*, et al., Case No. 1:21-cv-171, and *Johnson v. Hill, et al.*, Case No. 1:21-cv-155 [See Doc. 27].

### 2. *Facts as alleged by Defendants*

In 2019, Plaintiff was an inmate housed at SOCF with a level E security,[4] due to his history of serious assault on staff and had recently utilized cuffs as a weapon. [Ex. 1, Barney Interrogatories, P. 10-11, ¶ 23, bs #000010-11; Ex. 2, Use of Force Report (UOF), bs #000019; Ex. 3, Disciplinary Records, bs #000066; bs #000058-130]. On March 6, 2019, approximately one week prior to the date of the alleged incident in this Complaint, Plaintiff was being escorted from the shower when he assaulted Officer Wellman by removing his hands from the cuffs and hitting Officer Wellman below the left eye, causing a cut and swelling. [Ex. 3, bs #000066; bs #000085; bs #000101]. Plaintiff had been charged and found guilty of violating Rules 5, 21, and 30, i.e.

---

[4] A Level E security rating is the highest and most restrictive classification, reserved for individuals who pose the greatest risk to others or are active members of security threat groups. Inmates at this level are subject to the most stringent supervision, with limited movement and privileges, and are housed in the most secure facilities. See ODRC Policy 53-CLS-10.

causing, or attempting to cause, physical harm to another with a weapon; disobedience of a direct order; removing or escaping from physical restraints (handcuffs, leg iron. etc.) or any confined area within an institution (cell, recreation area, strip cell, vehicle, etc.). [Ex. 3, bs #000077]. He was placed in J1 unit as a result of his assault on Officer Wellman the week prior.

On March 13, 2019, at approximately 9:30 a.m., Defendant Barney was working on the housing unit on J1 where Plaintiff was being housed. [Ex. 1, bs # 000003-4]. At that time, Plaintiff was in restrictive housing [R.H.] due to assaultive behavior towards staff. [*Id.* at bs #000005]. Plaintiff had been removed from his assigned cell and placed in the shower cell, which was next door, while Defendant Barney entered J-J1, Plaintiff's assigned cell, to search for and remove contraband. [*Id.* at P. 6]. Plaintiff had threatened to spit on Defendant Barney. As Defendant Barney exited Plaintiff's cell, Plaintiff, who was in the shower cell, spit at him. [*Id.*]. As a result, Defendant Barney deployed OC spray to Plaintiff's facial area to gain control. [*Id.* at bs #000013].

At approximately 10:15 a.m.[5], Defendant Joseph responded to the shower area[6] to remove Plaintiff from the shower and to complete a use of force form. [Ex. 1, bs #000007; Ex. 4, Joseph Interrogatories, bs #0000133; Ex. 3, bs #000119]. The video demonstrates that Defendants Joseph and Barney spent over five minutes attempting to gain Plaintiff's compliance and to get him to leave the shower cell peacefully. [Ex. 6, Video 10:20.54 until 10:26.05]. Plaintiff defiantly refused orders for several minutes but eventually stated that he would come out peacefully. [Ex. 1, bs #000007; Ex. 4, bs #000133; Ex. 3, bs #000119]. However, Plaintiff slipped his cuffs by

---

[5] The video evidence of this matter indicates that Defendant Joseph and Defendant Barney were present at the shower cell as of 10:20.54. The incident report indicates that it was approximately 10:15 a.m. See Video at 10:20.54.

[6] Plaintiff was in the shower cell when the use of force incident occurred. Due to PREA, you do not see Plaintiff or the use of force incident. Rather, you see Defendants standing outside of the shower area cell.

pulling his right hand out of the cuff and he attempted to hit Defendant Joseph. [Ex. 1, Barney Interrogatories, P. 7; Ex. 4, bs #000134, bs #000136]

The video demonstrates that Defendants Joseph and Barney entered the shower cell at approximately 10:26.05. In an attempt to gain control over Plaintiff, Defendants Joseph and Barney took hold of Plaintiff and assisted him to the floor. [Ex. 1, bs #000008; Ex. 2, bs #000015-57]. Plaintiff continued to physically resist. Because Plaintiff refused to obey verbal directives and because he had already attempted to cause physical harm to officers, in an effort to gain control, closed fists strikes were delivered to the inmate's mid-section by Defendant Barney and closed fist strikes to the inmate's facial area were delivered by Defendant Joseph. [Ex. 1, bs #000008; Ex. 4, bs #000136]. Plaintiff continued to physically resist and was able to regain his feet. [Ex. 1, bs #000008; Ex. 4, bs #000136]. Defendant Barney hit the "man down" alarm, prompting Defendant Spriggs to arrive to assist and attempt to gain control of Plaintiff as Plaintiff continued to physically resist. [Ex. 5, Spriggs Interrogatories, bs #000145; Ex. 6, Video at 10:26.08]. Additional closed fist strikes were delivered in an effort to gain control of Plaintiff. [Ex. 1, bs #000008]. Defendant Joseph then utilized his PR24, striking Plaintiff in the thigh area to gain control. [Ex. 1, bs #000008]. Four additional officers arrived to assist in gaining control over Plaintiff. [Ex. 6, at 10:28.01 to 10:29.09]. Plaintiff was placed on the floor, handcuffs were utilized, and control was regained. [Ex. 1, bs #000008; Ex. 5, bs #000145; Ex. 2, bs# DRC000015-DRC000057]. Plaintiff was then escorted to medical as he was involved in a Use of Force event. [Ex. 6, Video, 10:28.26].

Defendants Barney, Joseph, and Spriggs were not present for the escort or Plaintiff's subsequent medical examination. [Ex. 1, bs #000008, Ex. 4, bs #000136; Ex. 5, bs #000147; Ex. 2, bs# DRC000015-DRC000057].

During Plaintiff's medical examination, he was observed to have mild swelling to the right cheek bone area, one 1-centimeter laceration to the left side of his face, and one 1-centimeter laceration to the left upper lip with edema. [Ex. 2, bs #000047]. Plaintiff was advised that he would benefit from stitches, but he refused. [*Id.*]. On March 14, 2019, Plaintiff had a follow up medical examination at the infirmary. Medical staff observed that Plaintiff's right eye was red with bruising and swelling noted around it, the left cheek bone area was swollen yet non-tender on palpation with no signs or symptoms of fracture, the upper and lower lip were swollen with healing lacerations, and he had an approximately 1centimeter laceration on the left side of his face, anterior to left ear.  [Ex. 2, bs #000049].

For spitting on Defendant Barney, Plaintiff was charged with Rule 6 and 60 violations, throwing, expelling, or otherwise causing a bodily substance to come into contact with another; Attempting to commit; aiding another in the commission of; soliciting another to commit; or entering into an agreement with another to commit any of the above acts. [Ex. 3, bs #000109]. Plaintiff was found guilty of both violations. [Ex. 3, bs #000122].

For slipping his handcuffs attempting to assault Defendant Joseph, and then physically resisting, Plaintiff was charged with Rule 60, 04, 20, and 21 violations, attempting to commit; aiding another in the commission of; soliciting another to commit; or entering into an agreement with another to commit any of the above acts; Causing, or attempting to cause, physical harm to another; physical resistance to a direct order; disobedience of a direct order. [Ex. 3, bs #000119]. Plaintiff was found guilty of all violations. [Ex. 3, bs #000125, bs #000130].

**B.** *Johnson v. Hill, et al.,* **S.D. Ohio Case No. 1:21-cv-155 (McFarland, J.)**

On April 26, 2021, Plaintiff filed suit against Teresa Hill, nurse, Laura Hart, John Doe Doctor, John Doe Nurse, John Doe Mental Health Staff, Jane Doe, Supervisor of Medical, John

Doe Correctional Officer (terminated 02/20/2024). The factual allegations in the *Hill* Complaint pick up after the attack alleged in *Barney* Complaint. Plaintiff alleged that while he was attacked by Defendants Neff and Fri in a room in the infirmary, Nurse Hill and other medical staff watched. [Case no. 1:21-cv-155, Doc. 5, PageID 63]. Specifically, Plaintiff includes allegations against three staff members, who are listed as John and Jane Doe Defendants: a white male nurse with blonde hair, a white female nurse with red hair, and a white older male doctor. [Case no. 1:21-cv-155, Doc. 1-1, PageID 25, 27]. The District Court conducted an initial screening of the Complaint pursuant to U.S.C. §§ 1915(e)(2)(B)(i) and 1915A(b)(1), and dismissed, with prejudice, all of Plaintiff's claims except the claim of excessive force against Defendant Neff and the failure to protect claims against Defendants Hill and three John/Jane Doe Defendants. [Case no. 1:21-cv-155, Doc. 6, Report and Recommendation, PageID 77; RE 11, Order Overruling Objection, Adopting Report and Recommendation, and Consolidation Actions]. The *Hill* complaint then became a supplemental complaint to the *Barney* matter.

     **C.**    *Johnson v. Little, et al.*, **S.D. Ohio Case No. 1:21-cv-171 (McFarland, J.)**

On April 7, 2021, Plaintiff filed suit against Lt. Kristal Little, Warden Ron Erdos (terminated 05/25/2021), Inspector Linnea Malhman (terminated 05/25/2021), Unit Manger Chief Cynthia Davis (terminated 05/25/2021), Case Manager Michael Rush (terminated 05/25/2021), John Doe 1 (thereafter substituted with Lt. Eaches,) John Doe II (thereafter substituted with Lt. Setty), and John Doe III (thereafter substituted with G. Fri). [1:21-cv-171, Doc. 5, Complaint]. The factual allegations in this matter pick up after the alleged attack in the *Barney* matter. [1:21-cv-171, Doc. 6, PageID 75]. Plaintiff claims that he was escorted to the infirmary by Defendants Fri and Neff and attacked again on the same day. [1:21-cv-171, RE 5]. Specifically, Plaintiff claimed that Neff (named as a Defendant in *Hill*), and Defendant Fri attacked him with punches while

Defendants Setty, Little, Eaches, and Rush watched and gave their consent to continue the attack. (*Id.*). Plaintiff further claimed that several non-party nurses and members of the medical staff also watched the attack and failed to take any action to protect him. (*Id.*). The District Court conducted an initial screening of the Complaint pursuant to U.S.C. §§ 1915(e)(2)(B)(i) and 1915A(b)(1), and dismissed, with prejudice, all of Plaintiff's claims except for his excessive force and failure to protect claims against Defendants Fri, Setty, Little, Eaches, and Rush. [1:21-cv-171, RE 6, Report and Recommendation, PageID 77; RE 11, Order Overruling Objection, Adopting Report and Recommendation, and Consolidation Actions].

On May 27, 2021, the District Court issued a Consolidation Order, which consolidated *Michael L. Johnson v. Lt. Kristal Little*, et al., No. l:21-cv-171 (S.D. Ohio), with *Johnson v. Barney, et al*, S.D. Ohio Case No. 1:21-cv-141 and designated the Complaint filed in l:21-cv-171 as a supplemental complaint in Case No. l:21-cv-141, Case No. 1:21-cv-171 was then terminated. [See, 1:21-cv-171, RE 12, Consolidation Order].

## II.    Law and Argument

### A.    Standard of Review: Fed. R. Civ. P. 56(a)

Rule 56 of the Federal Rules of Civil Procedure provides, in relevant part, as follows:

> A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Fed R. Civ. P. 56(a). In reviewing summary judgment motions, a court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *White v. Turfway Park Racing Ass'n.*, 909 F.2d 941, 943-44 (6th Cir. 1990); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

9

(1986). "A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quoting Black's Law Dictionary 881 (6th ed. 1979)).

To create a genuine issue of material fact, the non-movant must do more than present some evidence on a disputed issue. If the [non-movant's] evidence is merely colorable or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249-50 (1986). In most civil cases the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id*. at 252. Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, (1986). Moreover, "[t]he trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) (*citing Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established which create a genuine issue of material fact. *Fulson v. Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992).

"The absence of additional evidence to support a party's position beyond his own self-serving testimony is insufficient to overcome a motion for summary judgment." *Britenriker v. Mock*, No. 3:08-cv-1890, 2009 U.S. Dist. LEXIS 66478, fn.1, 2009 WL 2392917 (N.D. Ohio July 31, 2009); *see also Evans v. Techs. Application & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1994). "The mere existence of a scintilla of evidence in support of the non-movant is not sufficient; there

must be sufficient evidence upon which a jury could reasonably find for the non-movant." *Anderson*, 477 U.S. at 252. The Sixth Circuit has instructed lower courts that "the non-moving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *EEOC v. Ford Motor Corp.*, 782 F.3d 753, 770 (6th Cir. 2015) (en banc). In other words, "[w]hen opposing parties tell two different stories, one which is blatantly contradicted by the [video] record, so that no reasonable jury could believe it, a court should not adopt the version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Instead, those facts should be viewed "in the light depicted by the videotape." *Id.* at 381. When the opposing party's version of the facts is "conclusively contradicted by the record that no reasonable jury could believe it", a Court need not rely on the nonmovant's version that is so "utterly discredited by the record" as to render it a "visible fiction." *Chappell v. City of Cleveland*, 585 F.3d 901, 906 (6th Cir. 2009).

### B.      Section 1983 Claim

To maintain a claim under § 1983, a plaintiff must establish that he was deprived of a right secured by the Constitution or the laws of the United States, and that the deprivation was caused by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Simescu v. Emmet County Dep't of Soc. Services*, 942 F.2d 372, 374 (6th Cir. 1991). This is because § 1983 "is not itself a source of substantive rights," but instead merely provides "a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979). Thus, the first step in evaluating a § 1983 claim is to identify the specific constitutional right allegedly infringed. *Graham v. Connor*, 490 U.S. 386, 394; 109 S.Ct.1865 (1989); *Baker*, 443 U.S. at 140. Then, the plaintiff must demonstrate the connection between the alleged wrongdoer and the

11

deprivation. See e.g. *Deaton v. Montgomery Cty.*, 989 F.2d 885, 889 (6th Cir.1993) ("Congress did not intend § 1983 liability to attach where causation is absent.").

### C. Plaintiff's claims against Defendants in their official capacities are barred by Ohio's sovereign immunity.

Plaintiff's Consolidated Complaints do not clearly specify the capacity under which Plaintiff is suing Defendants. However, to the extent that he is suing any Defendant in their official capacity, these claims are barred by Ohio's sovereign immunity. "A suit against a state official operates as an action against the State itself." *Manning v. Petiniot*, 2025 U.S. Dist. LEXIS 167521, *9, 2025 WL 2481009 (*citing Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71 n.10 (1989)). "The State of Ohio has not waived its sovereign immunity, nor has it consented to civil rights suits in federal court. *Id.* (*citing Mixon v. Ohio,* 193 F.3d 389, 397 (6th Cir. 1999)). Therefore, any official capacity claims brought by Plaintiff against Defendants are barred by sovereign immunity. *WCI, Inc. v. Ohio Dep't of Pub. Safety,* 18 F.4th 509, 513-14 (6th Cir. 2021).

### D. Statute of Limitations bars the allegations in *Hill* and *Little*.

In Ohio, a two-year statute of limitations applies to actions under 42 U.S.C. § 1983. *Browning v. Pendleton*, 869 F.2d 989, 990 (6th Cir. Ohio 1989) (en banc); *Armstrong v. Fowler* , No.1:07 CV 3662, 2008 U.S. Dist. LEXIS 10225, at *5 (N.D. Ohio Feb. 12, 2008). This time-limit begins to run from the time a "plaintiff [knows] or has reason to know about the act providing the basis of his or her injury." *Cooey v. Strickland*, 544 F.3d 588, 590 (6th Cir. Ohio 2008)

Plaintiff filed *Johnson v. Hill, et al.,* S.D. Ohio case no. 1:21-cv-155 on April 26, 2021, against Defendants Teresa Hill, Laura Hart, John Doe Doctor, John Doe Nurse, John Doe Mental Health Staff, Jane Doe, Supervisor of Medical, John Doe Correctional Officer for events which allegedly took place on March 13, 2019. These claims are time barred under the statute of

12

limitations. *Cooey*, 544 F.3d at 590. Therefore, these Defendants are entitled to summary judgment in their favor.

Plaintiff filed *Johnson v. Little, et al.*, S.D. Ohio case no. 1:21-cv-171 on April 7, 2021, against Defendants Lt. Kristal Little, Warden Ron Erdos (terminated 05/25/2021), Inspector Linnea Malhman (terminated 05/25/2021), Unit Manger Chief Cynthia Davis (terminated 05/25/2021), Case Manager Michael Rush (terminated 05/25/2021), John Doe 1 (thereafter substituted with Lt. Eaches,) John Doe II (thereafter substituted with Lt. Setty), and John Doe III (thereafter substituted with G. Fri) for events which allegedly took place on March 13, 2019, as such these claims are time barred under the statute of limitations. *Cooey*, 544 F.3d at 590. Therefore, these Defendants are entitled to summary judgment in their favor.

### E.    Defendants Barney, Joseph, and Spriggs did not use excessive force.

The Eighth Amendment prohibition against cruel and unusual punishment prohibits the deliberate use of force by a prison official that is "excessive and unjustified." *Cornwall v. Dahlberg*, 963 F.2d 912, 915 (6th Cir. 1992). "After incarceration, only the 'unnecessary and wanton infliction of pain'… constitutes cruel and unusual punishment." *Whitley v. Ablers*, 475 U.S. 312, 105 S.Ct. 1078, 1085 (1986). As such, prison officials are only prohibited under the Eighth Amendment from conduct that equates to the engagement in the "unnecessary and wanton" infliction of pain. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). Actions by correctional staff are "unnecessary and wanton" when that conduct is without any penological justification. *Id.* "[T]he good faith use of physical force in pursuit of valid penological or institutional goals will rarely, if ever, violate the Eighth Amendment." *Parris v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986).

Maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law. *Combs v. Wilkinson*, 315 F.3d 548, 556

13

(6th Cir. 2002). While the unjustified infliction of bodily harm to an inmate by a correctional officer gives rise to a claim under 42 U.S.C. § 1983, liability will only be imposed if the alleged bodily harm arises to the level of a constitutional violation. *Caldwell v. Moore*, 968 F.2d 595 (6th Cir. 1992) (quoting *Franklin v. Aycock*, 795 F.2d 1253 (6th Cir. 1986)). The infliction of pain in the course of a prison security measure does not amount to a constitutional violation simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable. *Whitley v. Albers,* 475 U.S. 312, 319 (1986*)*.

"Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973) (finding that the Eighth Amendment's protections are less extensive than those afforded by the common law tort actions of battery and assault). Because prison officials "must make their decisions in haste, under pressure, and frequently without the luxury of a second chance," courts grant them "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Combs*, 315 F.3d at 557 (quoting *Hudson v. McMillian,* 503 U.S. 1 (1992)). Therefore, the standard, in determining excessive force in violation of the cruel and unusual punishment clause of the Eighth Amendment, is whether the force was used to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm. *Hudson*, 503 U.S. at 6. In making this inquiry, a court must consider (1) the need for the use of force, (2) the relationship between the need and the type and amount of the force used, (3) the threat perceived by the officials, (4) and the extent of the injury inflicted. See *Hudson*, 503 U.S. at 7 (1993).

In determining the motivations of correctional officers, courts should consider the reasons for the application of force, the need for the force applied, and the extent of inflicted injury.

14

*Caldwell*, 968 F.2d at 600. When considering these factors, inferences may be drawn as to whether the applied force could plausibly have been thought necessary or instead, whether it evidences an unjustified infliction of harm. *Whitley*, 475 U.S. at 321

For Plaintiff to meet his burden of showing excessive use of force, he must meet two requirements, an objective component that the pain inflicted was "sufficiently serious," and a subjective component, which focuses on the state of mind of the prison official. See *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir.2011) (citations omitted). The relevant inquiry is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Hudson,* 503 U.S. 1 at 6 (internal quotation marks omitted). Courts may consider "the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of injury inflicted." *Whitley*, 475 U.S. at 321. Courts may also consider the circumstances "as reasonably perceived by the responsible officials on the basis of the facts known to them, and any efforts made to temper the severity of a forceful response." *Id*.

> **i.** **Plaintiff cannot satisfy the objective element of an Excessive Force claim because the force used was reasonable under the circumstances.**

The objective component of an excessive force claim requires that a plaintiff's injury be "sufficiently serious." *Id. De minimis* injuries are injuries that do not require any medical treatment after the initial evaluation. *Richmond v. Settles*, 450 F. App'x 448, 454 (6th Cir. 2011)(citing *Jarriett v. Wilson*, 414 F.3d 634, 641 (6th Cir. 2005)(finding that claims that the prisoner's leg became swollen like a grapefruit and that he had severe cramps in his thighs were de minimis)).

"It is true that the extent of injury is not 'dispositive of whether an Eighth Amendment violation has occurred,' but it is also true that such evidence 'may help determine the amount of

15

force used by the prison official.'" *Bullocks v. Hale,* 2019 U.S. Dist. LEXIS 86674, at *22 *report and recommendation adopted*, 478 F. Supp. 3d at 642 (S.D. Ohio 2020) (quoting *Cordell*, 759 F.3d at 580-81). "Likewise, although it is unnecessary for an inmate to show any 'significant' injury, the extent of the injury remains a factor to be considered in determining whether the assertion of force was objectively unreasonable." *Id.* citing *Wilkins v. Gaddy*, 559 U.S. 34, 130 S.Ct. 1175, 1178, 175 L. Ed. 2d 995 (2010).

Here, Plaintiff received minimal injuries to his face; however, the injuries were proportional to the force necessary to subdue Plaintiff after he slipped his cuffs and tried to attack Defendant Jospeh. See e.g. *Bailey v. Golladay*, 421 F.App'x 579, 582 (6th Cir.2011)(Officers who pushed inmate up against the wall, punched the inmate in the ribs, and struck the inmate in the face entitled to summary judgment because the corrections officers only used as much force as necessary and reasonably calculated to respond to the reasonable threat perceived by the corrections officers, and the use of force was made by the corrections officers in a good faith effort to maintain discipline).

### ii. Plaintiff cannot satisfy the subjective element of an Excessive Force claim because Defendants acted in good faith to maintain order and not for the purpose of causing harm.

In considering the subjective component of an excessive force claim, a court considers 1) the need for the use of force; 2) the relationship between that need and the type and amount of force used; 3) the threat reasonably perceived by the official, and; 4) the extent of the injury inflicted. *Hudson,* 503 U.S. at 7; *Whitley,* 475 U.S. at 320. "Because the use of force relates to the prison official's legitimate interest in maintaining security and order, the court must be deferential in its review of the necessity and force." *Hunter v. Ervin*, No. 1:19-cv-204, 2020 U.S. Dist. LEXIS 95564, at *9 (S.D. Ohio May 31, 2020) (citing *Whitley,* 475 U.S. at 327).

16

All four factors weigh in Defendants' favor. First, the need for force was clear. Plaintiff, who had a history of assaulting corrections officers, had already been involved in a use of force that same day, he refused to leave the shower area, he had slipped his cuff and then utilized the cuff as a weapon when he attempted to hit Defendant Jospeh. Defendants Joseph and Barney utilized force to gain control of Plaintiff, who was resisting. . [Ex. 1, bs #000010-11, ¶ 23; Ex. 2, bs #000019; Ex. 3, bs #000066]. Defendant Spriggs responded to the man down button, observed Plaintiff resisting, and then joined Defendants Joseph and Barney to gain control of Plaintiff [Ex. 5, bs #000145]. It took all three Defendants, plus four additional staff, to regain control over Plaintiff and cuff him. [Ex. 1, bs #000008; Ex. 5, bs #000145; Ex. 2, bs #000015-000057].

Second, the force utilized by Defendants Joseph, Barney, and Spriggs was proportional to the need to regain control of Plaintiff, who was defiantly and violently disobeying orders and attacking staff. Defendants Joseph, Barney, and Spriggs utilized the least amount of force necessary for the least amount of time to regain control over Plaintiff. [Ex. 5, bs #000145; Ex. 4, bs #000134, Ex. 2, bs #000015-000057]. While Plaintiff received minimal injuries to his face, the injuries were a result of force that was applied in a good-faith effort to maintain or restore discipline. The force was not applied maliciously and sadistically to cause harm. [*Id.*]. See e.g. *Bartnick v. Carr*, W.D.Mich. No. 1:23-cv-1346, 2025 U.S. Dist. LEXIS 135549, at *8 (June 9, 2025).

Third, Defendants Joseph, Barney, and Spriggs reasonably perceived that Plaintiff, an inmate with a Security E level, and with a history of assaulting officers by utilizing handcuffs as a weapon, was a threat when Plaintiff was attempting to utilize the handcuffs as a weapon and assault Defendant Joseph.

17

Fourth, Plaintiff received minimal injuries to his face; however, the extent of his injuries was commensurate with the force necessary to regain control of Plaintiff. [Ex. 2, bs #000047]. Further, there was no malicious intent by any of the Defendants, rather, these officers utilized force in a good faith effort to regain control.   [Ex. 1, bs #000001-000057; Ex. 4, bs #000131-000140; Ex. 5, bs #000015-000141-151; Ex. 2, bs# DRC0000151-DRC000057].

The actions of Defendants here were responsive to an immediate concern for safety and undertaken in good faith. There is no evidence, beyond Plaintiff's conclusory allegations, to suggest that Defendants acted with malicious or sadistic intent, in fact the opposite is evidenced. Plaintiff, a Security Level E risk inmate, who had recently assaulted staff with his handcuffs attempted to do the very same thing in this instance. Plaintiff was the person acting with malicious and sadistic intent. Therefore, Defendants are entitled to summary judgment. *Hudson,* 503 U.S. 1 at 6

### F.      *Heck* and the "Favorable Termination Rule"

In *Heck*, after the plaintiff was convicted of voluntary manslaughter, and during the pendency of his criminal appeal, he filed a civil suit under 42 U.S.C. § 1983 against two prosecutors and the investigator who worked to convict him.  The plaintiff sought monetary damages (and not injunctive relief from his sentence) for the destruction of evidence, an "unlawful" investigation, and allowing certain inappropriate evidence to be used in his criminal trial. *Id* at 479.  In upholding the dismissal of the action, the Court held:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.  A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

18

*Id.* at 486–87. The Court went on to define the inquiry as:

> [T]he district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

*Id.* at 487. In subsequent decisions, the Court extended this "favorable termination rule" to rulings in a prison-administration process. *See Edwards v. Balisok*, 520 U.S. 641 (1997); *Muhammad v. Close*, 540 U.S. 749 (2004) (describing the extension of the *Heck* doctrine in *Edwards*); *see also Orange v. Ellis*, 348 F. App'x 69 (5th Cir. 2009) ("Until [the plaintiff] can show that his disciplinary charges have been overturned, the court cannot redress the excessive force claim under Section 1983.").

Similarly, in applying the *Heck* standard, the Sixth Circuit Court of Appeals has upheld the dismissal of cases where an inmate was convicted of a prison infraction. In *Jennings v. Mitchell*, 93 F. App'x 723 (6th Cir. 2004), the court considered whether the trial court's granting of the defendants' motion for summary judgment was appropriate. The plaintiff alleged that he was subjected to cruel and unusual punishment during his incarceration when two corrections officers sprayed him with a chemical agent for refusing to exit a shower. *Id* at 724. The plaintiff was convicted of misconduct in a disciplinary hearing for disobeying a direct order. *Id.* at 725. In upholding the grant of summary judgment to the defendants in light of the *Heck* doctrine, the Sixth Circuit stated "[a] prisoner found guilty in a prison disciplinary hearing cannot use § 1983 to collaterally attack the hearing's validity or the conduct underlying the disciplinary conviction. Because a favorable ruling on Jennings's Eighth Amendment claim would imply the invalidity of

19

his disciplinary conviction, this claim is not cognizable." *Id.* (citing *Huey v. Stine*, 230 F.3d 226, 230–31 (6th Cir. 2000); *Edwards v. Balisok*, 520 U.S. 641, 648 (1997)).

In applying the favorable-termination rule in another prisoner case, the Sixth Circuit concluded that the district court properly granted summary judgment for the defendants on the plaintiff's Eighth Amendment claim, which arose from an alleged assault for which the plaintiff received a major misconduct violation. *Denham v. Shroad*, 56 F. App'x 692, 693 (6th Cir. 2003). The *Denham* Court stated:

> Since granting Denham his requested relief would call into question the validity of his disciplinary conviction, his Eighth Amendment claim is not cognizable under § 1983. A prisoner found guilty in a prison disciplinary hearing cannot use § 1983 to collaterally attack the hearing's validity or the conduct underlying the disciplinary conviction.

*Id.*; *accord Bell v. Wilkinson*, 145 F. App'x 169, 170 (6th Cir. 2005) ("Bell [can] not challenge the decision of the prison's Rules Infraction Board under § 1983 unless the Board's decision is overturned.").

Each officer that responded to the incident filled out a separate Use of Force Report, Plaintiff wrote his statement, the Medical Exam Report was evaluated, video evidence was reviewed, it was determined that Plaintiff violated Rules 6 and 60, throwing, expelling, or otherwise causing a bodily substance to come into contact with another; Attempting to commit; aiding another in the commission of; soliciting another to commit; or entering into an agreement with another to commit any of the above acts. Plaintiff was found guilty and that was affirmed by the Chairman of the Rules Infraction Board. [Ex. 3, SOCF-19-000830, bs #000109; bs #000112 DRC000104; bs #000119; bs #000125; bs #000130].

Although Plaintiff alleges Defendants used excessive force on him, after having the opportunity to review the reports and facts presented at a disciplinary hearing before the Rules

20

Infraction Board, the Board disagreed. [*Id*]. If Plaintiff prevails in the current action, he will have established that his RIB conviction for the rules violation lacks any basis. As such, a finding would necessarily imply the invalidity of the disciplinary conviction, it must be dismissed pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994) and its progeny.

### F. Defendants are entitled to qualified immunity.

Ohio Administrative Code 5120-9-01, sets forth circumstances under which correctional officers are authorized to use force against inmates. Ohio Adm. Code 5120-9-01(B)(1) defines force as "the exertion or application of a physical compulsion or constraint." Correctional officers "considering the use of force shall evaluate the need to use force based on the circumstances as known and perceived at the time it is considered." Force may be used "only to the extent deemed necessary to control the situation." Ohio Adm. Code 5120-9-01(C)(1). Among other situations, corrections officers may use force in "[s]elf-defense from physical attack or threat of physical harm." Ohio Adm. Code 5120-9-01(C)(2)(a). Force may also be used "[w]hen necessary to control or subdue an inmate who refuses to obey prison rules, regulations or orders." Ohio Adm. Code 5120-9-01(C)(2)(c). Excessive force "exceeds that force which reasonably appears to be necessary under all the circumstances surrounding the incident." Ohio Adm.Code 5120-9-01(B)(3).

Defendants are entitled to qualified immunity because Plaintiff has not demonstrated that defendants violated a clearly established constitutional right under the circumstances alleged. The doctrine of qualified immunity protects government officials performing discretionary functions from liability for civil damages unless their conduct violated a "clearly established" constitutional right of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This protection is broad and applies unless the official was "plainly incompetent" or "knowingly violate[d] the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). ). Once qualified

21

immunity is raised, the plaintiff bears the burden of showing that the defendant is not entitled to qualified immunity. *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015), citing *Reilly v. Vadlamudi*, 680 F.3d 617, 623 (6th Cir. 2012).

Qualified immunity requires two inquiries, which may be addressed in either order. *Pearson v. Callahan*, 555 U.S. 223 (2009). First, whether the facts alleged show the violation of a constitutional right; and second, whether that right was clearly established at the time of the alleged conduct. Here, Plaintiff cannot satisfy either prong.

Plaintiff alleges excessive force under the Eighth Amendment after sustaining minor injuries to his face which occurred after he slipped out of his cuffs and swung on Lt. Joseph. The evidence shows that Defendants Barney, Joseph and Spriggs acted in good faith to address a potential threat from Plaintiff, who had slipped out of his cuffs and was trying to assault Lt. Joseph. There is no evidence that Defendants Barney, Joseph or Spriggs acted maliciously and sadistically for the purpose of causing harm. Rather, the force used was a proportionate response to Plaintiff's serious and escalating actions. Further, the use of force lasted for approximately 2 minutes and 21 seconds, which was the time necessary to regain control over Plaintiff. As the Supreme Court has emphasized, officials are entitled to qualified immunity if their decision was reasonable—even if mistaken. *Hunter v. Bryant*, 502 U.S. 224, 229 (1991). That standard is clearly met here when an inmate with a long history of violent attacks on correction officers was attacking a correction officer.

Assuming this Court finds that Plaintiff has demonstrated that he suffered from a Constitutional Violation, he must also show that the contours of the alleged violation were sufficiently clear that every reasonable official would have understood that what he was doing violated the Constitution. *Mullenix v. Luna,* 577 U.S. 7,11-12 (2015)(per curiam) (quoting *Reichle*

22

*v. Howards*, 566 U.S. 658, 664 (2012)). If he fails to carry his burden, his claim must fail. *Id.* For a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate. *Ashcroft v. Al-Kidd*, 563 U.S. 731, 741 (2011). The Sixth Circuit has framed the critical inquiry as whether "a reasonable officer confronted with the same situation would have known his conduct violated [the plaintiff's] right." *Jones v. Clark County*, 959 F.3d 748, 766 (6th Cir. 2020) (citation modified).

Plaintiff must direct the Court towards precedential Supreme Court or Sixth Circuit caselaw that clearly establishes the right. *See Coley v. Lucas County*, 799 F.3d 530, 540 (6th Cir. 2015). Plaintiff must produce a case that does more than define his rights "at a high level of generality." *Al-Kidd*, 563 U.S. at 742. Instead, the case must be specific enough that it would put *every* reasonable officer in "the *particular* situation that [Defendants] . . . confronted" on notice that the officer's conduct was unlawful. *Howse v. Hodous*, 953 F.3d 402, 407 (6th Cir. 2020). The need for a plaintiff to produce caselaw defining the contours of his rights is "especially important" in the fact-sensitive context of excessive-force cases. *Bell v. City of Southfield*, 37 F.4th 362, 367 (6th Cir. 2022) (citation modified). Merely citing a "generic right (for example, the Fourth Amendment right against excessive force) often will not give officers proper notice about what they must do in a specific situation (for example, a domestic disturbance involving a knife)," and is therefore insufficient to defeat qualified immunity. *Erickson v. Gogebic County*, 133 F.4th 703, 710 (6th Cir. 2025) (citation modified).

Here, Plaintiff initially refused to leave the shower cell, then slipped out of his cuff and attempted to assault Defendant Joseph. Defendants Joseph, Barney, and Spriggs reasonably reacted with *de minimis* force to secure Plaintiff and to prevent Plaintiff from assaulting them. [Ex. 4, bs #000130-141; Ex. 1, bs #000001-14; and Ex. 5, bs #000142-150].

23

Further, Defendant Spriggs arrived on the scene in response to a man-down call for assistance. [Ex. 5, bs #000142-150; Ex. 6, Video, 10:26.08]. When he arrived, he observed Defendants Joseph and Barney struggling with an inmate with who was physically resisting other officers. Defendant Spriggs reasonably came to the aid of fellow corrections officers. [Ex. 5, bs #000142-150].

While Plaintiff received minimal injuries to his face, the cause was solely due to the reasonable force necessary to subdue Plaintiff's continued, aggressive, escalating behavior. See e.g. *Bailey v. Golladay*, 421 F.App'x 579, 582 (6th Cir.2011)(Officers who pushed inmate up against the wall, punched the inmate in the ribs, and struck the inmate in the face entitled to qualified immunity because the corrections officers only used as much force as necessary and reasonably calculated to respond to the reasonable threat perceived by the corrections officers, and the use of force was made by the corrections officers in a good faith effort to maintain discipline).

These Defendants did not act maliciously or sadistically. Rather, they responded in a measured, careful, and appropriate way to gain Plaintiff's compliance. Plaintiff cannot establish that the use of force involved in gaining his compliance caused him to suffer a deprivation of any clearly established statutory or constitutional right such that a reasonable officer would understand his or her actions violated the same. Defendants are entitled to summary judgment because they are immune from Plaintiff's claims of excessive force.

## III.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant summary judgment in their favor. Any allegations contained in *Johnson v. Hill, et al.,* S.D. Ohio Case No. 1:21-cv-155, against Defendants Hill, Hart, John Doe Doctor, John Doe Nurse, John Doe Mental

24

Health Staff, Jane Doe, Supervisor of Medical, John Doe Correctional Officer are time barred. Likewise any allegations contained in *Johnson v. Little, et al.*, S.D. Ohio Case No. 1:21-cv-171 against Defendants Little, Erdos (terminated 05/25/2021), Malhman (terminated 05/25/2021), Davis (terminated 05/25/2021), Rush (terminated 05/25/2021), John Doe 1 (thereafter substituted with Lt. Eaches,) John Doe II (thereafter substituted with Lt. Setty), and John Doe III (thereafter substituted with G. Fri) are time barred.

The evidence shows that Defendants Barney, Joseph, and Spriggs did not violate Plaintiff's Eighth Amendment rights, and no reasonable jury could conclude otherwise. Even if a constitutional violation was found, Defendants are entitled to qualified immunity because their actions were reasonable under clearly established law. Accordingly, Plaintiff's claims should be dismissed with prejudice.

Respectfully submitted,

DAVE YOST
Ohio Attorney General

*/s/ Marcy A. Vonderwell*
MARCY A. VONDERWELL (0078311)*
 *\*Lead Counsel*
D. CHADD MCKITRICK (0073750)
Senior Assistant Attorneys General
Criminal Justice Section
Corrections Litigation Unit
30 E. Broad Street, 23rd Floor
Columbus, Ohio 43215
(614) 644-7233/Fax:  (866) 521-9902
Marcy.Vonderwell@OhioAGO.gov
Daniel.McKitrick@OhioAGO.gov

*Counsel for Defendants*

25

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing *Defendants' Motion for Summary Judgment*

has been electronically filed and has been served upon Plaintiff, via U.S. mail, postage prepaid,

this 24th day of October, 2025 at the below address:

Michael Johnson, #A515-853
Southern Ohio Correctional Facility
P.O. Box 45699
Lucasville, Ohio  45699

/s/  Marcy A. Vonderwell
MARCY A. VONDERWELL (0078311)
Senior Assistant Attorney General

26