**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| MICHAEL L. JOHNSON,<br>    Plaintiff, | Case No. 1:21-cv-141<br>Hopkins, J.<br>Litkovitz, M.J. |
| vs. | |
| BRIAN BARNEY, *et al.*,<br>    Defendants. | **ORDER AND REPORT AND<br>RECOMMENDATION** |

Plaintiff is an inmate at the Southern Ohio Correctional Facility (SOCF) and brings this consolidated prisoner civil rights action against various SOCF correctional officers and employees. As explained in this Court's December 16, 2021 Order (Doc. 27), the above-captioned case (*Barney*) has been consolidated with *Johnson v. Little, et al.*, Case No. 1:21-cv-171 (Hopkins, J.) (*Little*), and *Johnson v. Hill, et al.*, Case No. 1:21-cv-155 (Hopkins, J.) (*Hill*) (the "Consolidated Cases").[1] (*See* Docs. 13, 15).[2] This matter is before the Court on the motion for summary judgment filed by Interested Party the State of Ohio and defendants Barney, Spriggs, and Joseph (*Barney*); defendants Hill and Hart (*Hill*); and defendants Fri, Setty, Little, and Eaches (*Little*) (Doc. 175). Plaintiff moved for leave to exceed the page limitation for his response in opposition thereto (Doc. 186) and attached his proposed response (Doc. 186-1), to which defendants replied without opposition to plaintiff's request (Doc. 187). Considering defendants' lack of opposition, plaintiff's hand-written pleadings, and in the interest of a full and fair adjudication on the merits, plaintiff's request to exceed the page limitation for his response in opposition to defendants' motion for summary judgment (Doc. 186) is **GRANTED**.

---

[1] All case numbers referenced herein are cases filed in the U.S. District Court for the Southern District of Ohio.
[2] The complaints in these cases were filed in the above-captioned case at document numbers 12 and 14. Unless otherwise noted, document numbers referenced herein refer to the docket for Case No. 1:21-cv-141.

I.      **Procedural history**

On October 25, 2022, the undersigned filed a Report and Recommendation to grant the motion for summary judgment filed by defendants, having determined that plaintiff had failed to exhaust his administrative remedies.  (Doc. 104).  While that Report and Recommendation was pending, the Sixth Circuit decided *Lamb v. Kendrick*, 52 F.4th 286 (6th Cir. 2022), which opined on issues before the Court in defendants' motion for summary judgment; thus, the undersigned vacated her Report and Recommendation and sought additional briefing.  (*See* Doc. 114).  On February 27, 2023, the undersigned again filed a Report and Recommendation (Doc. 126) to grant defendants' motion for summary judgment, which the District Judge adopted over plaintiff's objections (Docs. 129, 134, 136).  (*See* Doc. 144).  Plaintiff appealed the decision. (Doc. 147).  After being dismissed for want of prosecution (Doc. 152) and then reinstated (Doc. 153), the Sixth Circuit resolved the appeal in plaintiff's favor—vacating the Court's judgment and remanding the matter.  (Doc. 157).  The undersigned thereafter issued an Order establishing discovery and dispositive motion deadlines (Doc. 158).  Defendants again moved for summary judgment.  (Doc. 175).

II.     **Brief factual background**

The Consolidated Cases concern events that took place on March 13, 2019 at SOCF.  As this Court has previously summarized, in *Barney*, plaintiff alleges that defendant Barney confronted him about his commissary purchases the previous day, took his commissary items from his cell, and sprayed him in the face with O.C. spray.  (*See* Doc. 7 at PAGEID 209). Plaintiff alleges he was then subjected to excessive force by defendants Joseph, Barney, and Spriggs while handcuffed with his hands behind his back in the shower area.  (*Id.*).

In *Little*, plaintiff alleges that defendant Fri used excessive force against him at the infirmary immediately following the incident described in the *Barney* complaint, and that defendants Setty, Little, and Eaches watched and failed to intervene. (*See* Case No. 1:21-cv-171, Doc. 6 at PAGEID 75). In *Hill*, plaintiff alleges that defendant Hill, defendant Hart,[3] and medical staff members also witnessed and failed to intervene in defendant Fri's use of excessive force against him at the infirmary at issue in *Little*. (*See* Case No. 1:21-cv-155, Doc. 6 at PAGEID 75).[4]

### III. Summary judgment standard

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A grant of summary judgment is proper unless the nonmoving party "establish[es] genuinely disputed material facts by 'citing to particular parts of materials in the record . . . or . . . showing that the materials cited do not establish the absence . . . of a genuine dispute.'" *United Specialty Ins. Co. v. Cole's Place, Inc.*, 936 F.3d 386, 403 (6th Cir. 2019) (quoting Fed. R. Civ. P. 56(c)(1)). The Court must evaluate the evidence, and all inferences drawn therefrom, in the light most favorable to the non-moving party. *Satterfield v. Tennessee*, 295 F.3d 611, 615 (6th Cir. 2002); *Matsushita*

---

[3] The Court granted plaintiff leave to amend his complaint to identify defendant Hart as one of the three, originally unidentified John/Jane defendant medical staff people.

[4] The Court dismissed plaintiff's claims against former defendants Neff and Rush related to these allegations for failure to perfect service of process. (*See* Docs. 142, 143).

*Elec. Indus. Co., Ltd. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Little Caesar Enters., Inc. v. OPPC, LLC*, 219 F.3d 547, 551 (6th Cir. 2000).

The trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine factual issue for trial. *Anderson*, 477 U.S. at 249. The trial court need not search the entire record for material issues of fact, *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989), but must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). However, "[f]acts that are not blatantly contradicted by [the evidence] remain entitled to an interpretation most favorable to the non-moving party." *Coble v. City of White House, Tenn.*, 634 F.3d 865, 870 (6th Cir. 2011). "In response to a properly supported summary judgment motion, the non-moving party 'is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." *Maston v. Montgomery Cnty. Jail Med. Staff Pers.*, 832 F. Supp. 2d 846, 849 (S.D. Ohio 2011) (quoting *Sixty Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)).

A fact is "material" if its resolution will affect the outcome of the lawsuit. *Beans v. City of Massillon*, No. 5:15-cv-1475, 2016 WL 7492503, at *5 (N.D. Ohio Dec. 30, 2016), *aff'd*, No.

4

17-3088, 2017 WL 3726755 (6th Cir. 2017) (citing *Anderson*, 477 U.S. at 248).  The party who seeks summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323.  To make its determination, the court "need consider only the cited materials, but it may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).  The party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968).

Because plaintiff is a pro se litigant, his filings are liberally construed.  *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999) (pro se plaintiffs enjoy the benefit of a liberal construction of their pleadings and filings)).  A party's status as a pro se litigant, however, does not alter the party's duty on a summary judgment motion to support his factual assertions with admissible evidence.  *Maston*, 832 F. Supp. 2d at 851-52 (citing *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010)).

IV.    **Analysis**

Defendants make two threshold arguments: (1) to the extent plaintiff brings official capacity claims against defendants, they are barred by Ohio's sovereign immunity, and (2) plaintiff's claims in *Little* and *Hill* are barred by the applicable statute of limitations.  The Court begins with these arguments before turning to defendants' remaining arguments, which concern the merits of the claims asserted in *Barney*.

5

A.    Ohio's sovereign immunity

Absent an express waiver, a state is immune from damage suits under the Eleventh Amendment. *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy*, 506 U.S. 139, 144 (1993); *Edelman v. Jordan*, 415 U.S. 651, 673 (1974). The State of Ohio has not constitutionally nor statutorily waived its Eleventh Amendment immunity in the federal courts. *See Johns v. Sup. Ct. of Ohio*, 753 F.2d 524, 527 (6th Cir. 1985); *State of Ohio v. Madeline Marie Nursing Homes*, 694 F.2d 449, 460-62 (6th Cir. 1982). The Eleventh Amendment bar extends to actions where the state is not a named party, but where the action is essentially one for the recovery of money from the state. *Edelman*, 415 U.S. at 663.

A suit against defendants in their official capacities would, in reality, be a way of pleading the action against the entity of which defendants are agents—the State of Ohio. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). Thus, actions against state officials in their official capacities are included in this bar. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989). *See also Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010) (quoting *Cady v. Arenac Co.*, 574 F.3d 334, 344 (6th Cir. 2009)) ("[A]n official-capacity suit against a state official is deemed to be a suit against the state and is thus barred by the Eleventh Amendment, absent a waiver." (citation and ellipsis omitted)). Therefore, defendants are immune from suit to the extent plaintiff sues them in their official capacities for monetary damages.

B.    Statute of limitations

Plaintiff's civil rights complaints in the Consolidated Cases are governed by Ohio's two-year statute of limitations applicable to personal injury claims. *See, e.g.*, *Browning v. Pendleton*, 869 F.2d 989, 992 (6th Cir. 1989) (holding that the "appropriate statute of limitations for 42

6

U.S.C. § 1983 civil rights actions arising in Ohio is contained in Ohio Rev. Code Ann. §

2305.10, which requires that actions for bodily injury be filed within two years after their

accrual"); *Wallace v. Kato*, 549 U.S. 384, 387 (2007) (and Supreme Court cases cited therein)

(holding that the statute of limitations governing § 1983 actions "is that which the State provides

for personal-injury torts"); *Zundel v. Holder*, 687 F.3d 271, 281 (6th Cir. 2012).  In the § 1983

context, the Sixth Circuit has adopted the discovery rule, which considers a plaintiff to have a

complete and present cause of action "when the plaintiff knows or has reason to know that the

act providing the basis of his or her injury has occurred."  *D'Ambrosio v. Marino*, 747 F.3d 378,

384 (6th Cir. 2014) (quoting *Cooey v. Strickland*, 479 F.3d 412, 416 (6th Cir. 2007)).

Defendants argue that plaintiff's complaints in *Hill* and *Little* are barred by the statute of

limitations because they were filed on April 26, 2021 and April 7, 2021, respectively—more than

two years after the date plaintiff discovered his cause of action (i.e., March 13, 2019).  For this

argument, defendants rely on the dates the complaints in these cases were separately filed on the

docket.  (*See* Doc. 175 at PAGEID 1877-78; Case No. 1:21-cv-155, document number 5; Case

No. 1:21-cv-171, document number 5).  In pro se prisoner civil actions, however, the "mailbox

rule"[5] applies.  *Scott v. Evans*, 116 F. App'x 699, 701 (6th Cir. 2004) (citing *Richard v. Ray,* 290

F.3d 810, 812 (6th Cir. 2002)).  Thus, "the complaint of a *pro se* petitioner who applies for

permission to proceed [*in forma pauperis* (IFP)] is deemed 'filed' for statute of limitations

purposes when the petitioner deposits both the complaint and the application to proceed IFP in

---

[5] The Supreme Court described this rule in the context of a pro se prisoner's notice of appeal, holding that it is "deemed 'filed' on the date that it is deposited in the prison mail system to be forwarded to the court clerk." *Scott v. Evans*, 116 F. App'x 699, 701 (6th Cir. 2004) (citing *Houston v. Lack,* 487 U.S. 266, 270 (1988)).

the prison mail system to be forwarded to the court clerk"—notwithstanding the fact that "the complaint is not formally stamped 'filed' until a later date when the IFP application is granted." *Id.* (quoting *Dean v. Veterans Admin. Reg'l Off.*, 943 F.2d 667, 671 (6th Cir. 1991), *vacated and remanded on other grounds*, 503 U.S. 902 (1992)).

Here, the complaints in *Hill* and *Little* were postmarked March 3 and 9, 2021, respectively (Case No. 1:21-cv-155, Doc. 1-3; Case No. 1:21-cv-171, Doc. 1-3), despite their later, separate filing on the docket with the grant of IFP status. The statute of limitations therefore does not bar plaintiffs' complaints in *Hill* and *Little*.[6]

Aside from their statute of limitations argument, defendants do not otherwise challenge the merits of plaintiff's § 1983 claims in *Hill* and *Little*. (*See* Doc. 175 at PAGEID 1878-90). Defendants' motion for summary judgment should therefore be denied as to the failure to protect claim in *Hill* against defendants Hill and Hart; the excessive force claim in *Little* against defendant Fri; and the failure to protect claims in *Little* against defendants Setty, Little, and Eaches.

     C.     *Barney*[7]

---

[6] Defendants do not raise a statute of limitations defense to the *Barney* complaint. The Court further notes that the statute of limitations "was tolled for the period during which his available state remedies were being exhausted." *Brown v. Morgan*, 209 F.3d 595, 596 (6th Cir. 2000).

[7] Plaintiff's excessive force claims against defendants Barney, Joseph, and Spriggs are clearly asserted at claim 2 (defendant Barney), claim 4 (defendant Joseph), and claim 7 (defendant Spriggs) in the *Barney* complaint. (*See* Doc. 6 at PAGEID 180-82). While the complaint narratively describes defendant Barney's use of O.C. spray, his excessive force claim against defendant Barney conspicuously omits any reference to it and focuses only on the subsequent alleged beating. *See id.* Consequently, defendants did not defend against any O.C. spray-related claim in their substantive arguments. (*See* Doc. 175 at PAGEID 1880-89). While the Court must construe plaintiff's complaint liberally, it may not "manufacture a claim out of whole cloth on the plaintiff's behalf." *Applegate v. E. Kentucky Corr. Complex,* No. CV 15-74, 2016 WL 1703339, at *2 (E.D. Ky. Apr. 27, 2016). Thus, the Court finds that plaintiff's excessive force claims in *Barney* do not include a claim against defendant Barney for his use of O.C. spray prior to the alleged beating.

The Court begins by laying out the evidence of record applicable to the remaining claims in *Barney*: excessive force by defendants Barney, Joseph, and Spriggs.  (*See* Doc. 11 at PAGEID 250 (Order adopting the Court's initial screening Report and Recommendation)).  Then, the Court will address defendants' remaining arguments.

      1.     *Plaintiff's evidence*

Plaintiff submitted the *Barney* complaint and his response in opposition to defendants' motion for summary judgment under penalty of perjury consistent with 28 U.S.C. § 1746.[8] (Doc. 6 at PAGEID 183; Doc. 186-1 at PAGEID 2162).  Thus, they have the same force and effect as an affidavit for purposes of responding to a motion for summary judgment under Fed. R. Civ. P. 56(c).  *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992).  Plaintiff states that on March 13, 2019, he was cuffed up for a shower, exited his cell, and moved to the shower next door.  (Doc. 6 at PAGEID 177). Defendant Barney then directed a racial slur at plaintiff, entered plaintiff's cell, and removed

---

[8] Under 28 U.S.C. § 1746:

> Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:
>
> . . . .
>
> (2) If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.  Executed on (date).
>
> (Signature)".

*Id.*

plaintiff's commissary items he had ordered on March 12, 2019. (*Id.*).  As defendant Barney left plaintiff's cell, he sprayed plaintiff with O.C. spray—all while plaintiff's hands were cuffed behind his back. (*Id.*).  Plaintiff asked to speak to mental health. (*Id.* at PAGEID 179). (*See also* Doc. 186-1 at PAGEID 2116, 2129-30).

Defendant Joseph then asked plaintiff if he wished to make a use of force statement, and plaintiff replied that he did. (Doc. 6 at PAGEID 179).  At this point, defendants Joseph and Barney were outside the shower cell. (*Id.*).  Defendant Joseph said, "you know you got one coming for attacking that officer," signaled another officer to open the shower door, and continued to provoke plaintiff verbally. (*Id.*).  After two to three minutes, defendant Joseph ran into the shower, followed by defendants Barney and Spriggs, and began to attack plaintiff with punches and a night stick. (*Id.*).  Plaintiff states he remained blinded by the prior use of O.C. spray with his hands cuffed behind his back during the attack, which lasted three to four minutes until more officers arrived pursuant to a "man down" signal. (*Id.*). (*See also* Doc. 186-1 at PAGEID 2116-17, 2130-32).  Plaintiff states that he "did not slip one hand out of the hand cuffs[,]" "attempt[ ] to hit [defendant] Joseph[,]" or "resist and refuse[ ] direct orders to comply" during this incident. (Doc. 186-1 at PAGEID 2146-47). (*See also* Doc. 6 at PAGEID 180-82 (plaintiff states in each excessive force claim that he did "did not pull or attempt to pull [his] hands from out [of] the handcuffs" and "was not violating any prison rule" or "acting disruptively")).

Plaintiff states that he suffered "life threaten[ing] injuries" from the beating. (*Id.* at PAGEID 247-48).  While institutional records show that plaintiff refused medical treatment on March 13, 2019, plaintiff states that he did so believing it would allow him to go to an outside

hospital and that medical staff falsified the medical exam.[9] (*Id.* at PAGEID 2134-35).  Plaintiff avers that medical staff simply "watch[ed] and laugh[ed]" as he suffered further beatings at the infirmary (the subject of the complaints in *Little* and *Hill*), which is why he did not want their treatment.  (Doc. 186-1 at PAGEID 2118).

### 2.    *Defendants' evidence*

Defendants' account of the events at issue is based on defendants Barney, Joseph, and Spriggs' responses to plaintiff's first set of interrogatories[10]; the Use of Force Report and medical records; disciplinary records; placement documents; conduct reports; and a manually filed SOCF video capturing part of the incident.[11]

When the incident giving rise to this lawsuit occurred, plaintiff was housed in the maximum security area of SOCF due to his discipline history—including his use of handcuffs as a weapon on another SOCF officer on March 6, 2019. (Doc. 175-1 at PAGEID 1958-2000). Plaintiff was found guilty of violating SOCF Rules 5, 21, and 30[12] for that earlier incident (*id.* at PAGEID 1994), and he did not appeal (*id.* at PAGEID 1998).

Defendants present evidence that on March 13, 2019, defendant Barney entered plaintiff's cell to look for and remove reported contraband while plaintiff was removed to the

---

[9] Plaintiff does not elaborate on what elements of the medical exam report were false.

[10] The interrogatory responses are based on first-hand knowledge, verified, and sworn under oath. (*See* Doc. 175-1 at PAGEID 1905, 2031, and 2041).

[11] Defendants proffer as business records relevant disciplinary records, placement documents, and conduct reports (Doc. 175-1 at PAGEID 1958-2022); the Use of Force packet for the March 13, 2019 incident (*id.* at PAGEID 1907-49), and SOCF video of the March 13, 2019 incident (Doc. 175-2) via the declarations of these records' custodians. (Doc. 175-1 at PAGEID 2044-49).  The declarations do not cover the "inmate discipline history" record attached to their motion for summary judgment. (Doc. 175-1 at PAGEID 1950-57).  Plaintiff references a second video (Doc. 186-1 at PAGEID 2158, referring to a "DVR 108-19"), but only "SOCF 106-19," which plaintiff also references, was manually filed. (*See* Doc. 175-1 (defs.' exhibit list)).

[12] These rules prohibit "[c]ausing, or attempting to cause, physical harm to another with a weapon; [d]isobedience of a direct order; [r]emoving or escaping from physical restraints (handcuffs, leg irons, etc.) or any confined area within an institution (cell, recreation area, strip cell, vehicle, etc.)." (*Id.* at PAGEID 1958).

11

shower area adjacent to his cell. (*Id.* at PAGEID 1898). Plaintiff shouted obscenities at defendant Barney, threatened to spit, and ultimately did spit at defendant Barney after he completed his cell shakedown and passed plaintiff at the shower area. (*Id.*). Defendant Barney deployed O.C. spray to plaintiff's face to gain control over him. (*Id.*).

Shortly after, at approximately 10:20 a.m., defendant Joseph reported to the shower area to retrieve plaintiff, who was refusing to exit, and to have plaintiff complete a use of force form related to the earlier use of O.C. spray. (*Id.* at PAGEID 2011). Plaintiff first indicated he would exit voluntarily but then refused directives to exit the shower for several minutes. (*Id.* at PAGEID 1899; 2011; 2028). Eventually, plaintiff slipped his right hand out of the cuff and attempted to hit defendant Joseph, but defendant Joseph took control of plaintiff's right hand, and defendants Barney and Joseph used force on plaintiff in an attempt to gain control over him despite his continued physical resistance. (*Id.* at PAGEID 1899-900, 2011, and 2028). Defendant Joseph used several closed fist strikes to plaintiff's facial area and several forward spin strikes to his left thigh with a PR-24. (*Id.* at PAGEID 2011). Defendant Barney used closed fist strikes to plaintiff's mid-section. (*Id.* at PAGEID 1900). During this time, defendant Barney signaled his "man down" alarm, and defendant Spriggs also responded, attempted to secure plaintiff's arms, and ultimately re-cuffed him. (*Id.* at PAGEID 1900; 2028; 2037).

The video recording submitted is of limited assistance to the Court. It does not capture the O.C. spray incident or the inside of the shower area, and there is no sound. It reflects that defendants Joesph and Barney stood outside the shower area at approximately 10:20 a.m. and waited several minutes before entering the shower area at just after 10:26 a.m. At just before 10:28 a.m., other officers begin to respond to the shower area.

Plaintiff's institutional medical records from after this incident reflect "mild swelling to right cheek bone area, slight swelling and approx. 1cm laceration to left side of face, approx. 1cm laceration to left upper lip with slight edema. . . ." (*Id.* at PAGEID 1939). Plaintiff was uncooperative and aggressive towards staff and refused their recommendation for stitches. (*Id.*). The next day, plaintiff returned to the infirmary with "multiple complaints" related to the injuries he sustained during the uses of force. (*Id.* at PAGEID 1941). He exhibited no new injuries, worsening of his existing injuries, or signs of fracture. (*Id.*).

Plaintiff was found guilty by the Rules Infraction Board of violating rules 6 and 60 (*id.* at PAGEID 2001 ("Throwing, expelling, or otherwise causing a bodily substance to come into contact with another, [a]ttempting to commit . . . any of the above acts")) related to defendant Barney's initial use of O.C. spray. (*Id.* at 2003-04, 2009-10). Plaintiff was found guilty of violating rules 4, 20, and 21 (*id.* at PAGEID 2011 ("[c]ausing, or attempting to cause, physical harm to another; [p]hysical resistance to a direct order; [d]isobedience of a direct order")) related to the subsequent use of force in the shower area. (*Id.* at PAGEID 2021-22).

### 3. *Law*

A convicted prisoner's right to be free from the use of excessive force by a prison official is governed by the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 327 (1986). The "core judicial inquiry" whenever a prison official stands accused of using excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)).

13

Eighth Amendment excessive force claims include both a subjective and an objective component. *Johnson v. Sootsman*, 79 F.4th 608, 615 (6th Cir. 2023).  The subjective component focuses on the prison official's state of mind, while the objective component analyzes whether the pain inflicted on the prisoner was "sufficiently serious." *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (quoting *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011)).  In the correctional "use-of-force context, the Supreme Court has applied a more demanding subjective test but a more relaxed objective test." *Sootsman*, 79 F.4th at 615-16.

The subjective intent necessary to sustain an excessive force claim goes beyond "deliberate indifference," which can suffice for inadequate medical care or conditions of confinement claims. *Id.* at 616.  Instead, force must have been exerted "maliciously and sadistically to inflict pain" to be actionable under the Eighth Amendment. *Id.* (citing *Hudson*, 503 U.S. at 5-7).  Force believed necessary, even if that belief is unreasonable, will not violate the Eighth Amendment. *Id.* (citing *Whitley*, 475 U.S. at 324).  To determine intent, courts are to consider: "What was the extent of the prisoner's injury?  What was the nature of the threat that justified the use of force?  Was the amount of force proportional to the threat?  And did the officer take any actions designed to reduce the required amount of force?" *Id.* at 618 (citing *Hudson*, 503 U.S. at 7, and *Whitley*, 475 U.S. at 321).  These questions underscore that force used "in a good-faith effort to maintain or restore discipline" does not violate a prisoner's Eighth Amendment rights. *Roberson v. Torres*, 770 F.3d 398, 406 (6th Cir. 2014) (quoting *Jennings v. Mitchell*, 93 F. App'x 723, 725 (6th Cir. 2004) (defendant corrections officers applied force— spraying the prisoner with pepper spray—in a "good-faith effort to maintain or restore discipline,

14

not to maliciously cause pain[,]" where the prisoner repeatedly disobeyed the officers' direct orders to "sit cross-legged on his bunk and face the wall")).

In cases concerning medical care or conditions of confinement, benchmarks for the objective inquiry include "serious" medical needs and "extreme" deprivations. *Sootsman*, 79 F.4th at 616. In excessive force cases, by contrast, "contemporary standards of decency" determine "whether specific conduct qualifies as cruel and unusual." *Id.* (quoting *Hudson*, 503 U.S. at 8). "While the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred." *Cordell*, 759 F.3d at 580-81 (citing *Wilkins*, 559 U.S. at 37). "When prison officials maliciously and sadistically use force to cause harm . . . , contemporary standards of decency always are violated . . . whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Wilkins*, 559 U.S. at 37 (quoting *Hudson*, 503 U.S. at 9). The absence of a serious injury is nonetheless relevant as a factor that suggests whether the use of force may "plausibly have been thought necessary" in a given situation. *Id.* (quoting *Hudson*, 503 U.S. at 7). "Although the Eighth Amendment can reach minor injuries caused by significant force," it "does not apply to 'de minimis uses of physical force' so long as this force does not repulse 'the conscience of mankind.'" *Sootsman*, 79 F.4th at 616 (quoting *Hudson*, 503 U.S. at 9-10).

4. *Arguments*

i. Objective component

15

Defendants first argue that plaintiff's injuries were de minimis and, therefore, not redressable under the Eighth Amendment. Defendants rely on *Richmond v. Settles*, 450 F. App'x 448 (6th Cir. 2011), for the proposition that de minimis injuries do not require medical treatment after the initial evaluation. *Id.* at 453. In *Richmond*, the plaintiff argued that his knee had been "knocked out of joint"; but the injury report in evidence reflected only "small superficial abrasions[,]" and the plaintiff's own report that he was "ok, just a little scratch here and there." *Id.* at 454. In addition, the plaintiff did not seek further medical treatment. *Id.* Based on this evidence, the court concluded that the record reflected no more than de minimis physical injuries. *Id.* This is distinguishable from the case at bar, where evidence reflects that SOCF medical staff recommended stitches, and plaintiff requested additional medical attention the next day—despite initially refusing treatment.

Defendants also rely on *Jarriett v. Wilson*, 162 F. App'x. 394 (6th Cir. 2005), which was cited in *Richmond* as holding that "claims that the prisoner's leg became swollen like a grapefruit and that he had severe cramps in his thighs were de minimis." *Richmond*, 450 F. App'x at 454. In *Jarriett*, however, the court relied on the fact that the plaintiff's allegations were inconsistent with all of the other uncontroverted evidence in the record showing that the injury plaintiff described was, in fact, only de minimis. 162 F. App'x at 400-01 & n.8. Here, plaintiff's account of his injuries is consistent with the other medical evidence of record showing obvious swelling and lacerations, for which further treatment was recommended by medical staff.

The Sixth Circuit has held force such as a "karate chop" to the back of the neck and grabbing a prisoner's neck de minimis. *Sootsman*, 79 F. 4th at 617 (discussing *Leary v. Livingston Cnty.*, 528 F.3d 438, 443 (6th Cir. 2008) and *Scott v. Churchill*, 225 F.3d 659, at *3

16

(6th Cir. 2000) (unpublished table decision)). But unlike here, the force in those cases lasted only moments (as opposed to several minutes) and "did not cause any 'objectively verifiable injury.'" *Id.* at 618 (quoting *Leary*, 528 F.3d at 443).

The Court sees no evidence supporting plaintiff's bald assertion in his response to defendants' motion for summary judgment that his injuries were life-threatening, but a reasonable juror could nevertheless conclude from the institutional medical records that plaintiff's injuries were serious. The Court therefore concludes that there is a genuine issue of material fact as to whether plaintiff's alleged injuries meet the objective component for his excessive force claims.

ii.      <u>Subjective component</u>

Defendants next argue that plaintiff cannot show the subjective element of his excessive force claim because defendants acted in good faith to maintain order and did not intentionally harm him. They emphasize that the Court's analysis must be deferential to defendants because the alleged uses of force related to defendants' "legitimate interest in maintaining security and order. . . ." *Hunter v. Ervin*, No. 1:19-cv-204, 2020 WL 2838509, at *4 (S.D. Ohio May 31, 2020) (report and recommendation), *adopted*, 2020 WL 3299729 (S.D. Ohio June 18, 2020).

Defendants cite the following evidence as demonstrating that defendants Barney, Joseph, and Spriggs' use of force in the shower area was necessary: plaintiff had a history of assaulting corrections officers, plaintiff had already provoked the use of force (O.C. spray) by corrections officers earlier that same day, plaintiff disobeyed orders to leave the shower area, plaintiff slipped his handcuffs and attempted to use them as a weapon against defendant Joseph, and several officers were ultimately needed to subdue plaintiff and get him to leave the shower area.

17

Defendants next argue that the force they used was proportional to the threat given plaintiff "defiantly and violently disobey[ed] orders and attack[ed] staff." (Doc. 175 at PAGEID 1882). Defendants also argue that their perception of the threat was reasonable given plaintiff's maximum security status, prior history of assaulting an officer with handcuffs, and attempted assault on defendant Joseph with handcuffs. Finally, defendants maintain that plaintiff's injuries to his face were minimal and demonstrate that they used no more force than was necessary to regain control.

In his response to defendants' motion for summary judgment, plaintiff denies that he disobeyed orders to leave the shower. Instead, defendant Joseph stated, "you know you got one coming for attacking that officer[,]" used a racial slur, and deployed other provocations for several minutes before he and defendant Barney entered the shower and began to beat plaintiff. (Doc. 186-1 at PAGEID 2131-32). Plaintiff also states that, during this time, he still had his hands cuffed behind his back and continued to suffer the effects of O.C. spray on his face from the earlier encounter with defendant Barney. (*Id.* at PAGEID 2131). Plaintiff insists he did not attempt to slip out of his cuffs and assault defendant Joseph or otherwise resist or fail to follow direct orders. (*Id.* at PAGEID 2146-47).

The Court examines the evidence in light of the *Sootsman* factors to determine whether there are issues of fact on defendants' subjective intent in their use of force against plaintiff. *See Sootsman*, 79 F.4th at 618.

*What was the extent of the prisoner's injury?* The extent of plaintiff's injury does not weigh strongly in favor of plaintiff or defendants. The Court has already determined that there is a genuine issue of material fact on the nature of plaintiff's injuries. While swelling and bruising

18

generally fall into the de minimis category, *see Bullocks v. Hale*, 478 F. Supp. 3d 639, 648 (S.D. Ohio 2020), *aff'd*, No. 20-3428, 2021 WL 1578198 (6th Cir. Mar. 1, 2021), plaintiff alleged and the medical record is consistent with injury beyond that—if only slightly so.

*What was the nature of the threat that justified the use of force?* Defendants have presented evidence that plaintiff's high security level generally, coupled with plaintiff's specific history of assault against an officer in the manner alleged to have occurred again on March 13, 2019, justified their use of force. Plaintiff avers several times, however, that he "did not pull or attempt to pull [his] hands from out [of] the hand cuffs." (Doc. 6 at PAGEID 180-82). (*See also* Doc. 186-1 at PAGEID 2146-47). Plaintiff also avers that he was not otherwise resisting or refusing direct orders. (Doc. 186-1 at PAGEID 2147). Viewing the evidence in the light most favorable to plaintiff, and in the absence of contradictory video evidence, there is an issue of fact as to whether plaintiff remained handcuffed and posed a threat of harm to the officers.

*Was the amount of force proportional to the threat?* If plaintiff had, in fact, pulled his hands out of the handcuffs and actively resisted, the amount of force applied could have been proportional to the threat. As with the factor above, however, plaintiff has presented evidence suggesting that there was no such threat, thereby creating an issue of fact on whether the force used was disproportionate to the threat, if any, posed by plaintiff.

*Did the officer take any actions designed to reduce the required amount of force?* Defendants Barney and Joseph's interrogatory responses indicate that they entered the shower area only after repeatedly ordering plaintiff out. (Doc. 175-1 at PAGEID 1899, 2028). Defendant Spriggs' interrogatory responses indicate that he reported to the scene only in response to a call for assistance in light of plaintiff's physical resistance. (*Id.* at PAGEID 2038).

19

This is consistent with video evidence, insofar as at shows defendants Barney and Joseph waiting approximately five minutes before entering the shower area, and other officers reporting to the area only approximately three minutes thereafter.  (*See* video recording, approximately 10:20:45 to 10:26:05 a.m., and approximately 10:27:54 a.m.).  Plaintiff, however, has presented evidence that defendants Barney and Joseph were not ordering him to exit the shower as they stood outside the shower area but rather provoking him to fight.  (Doc. 6 at PAGEID 179; Doc. 186-1 at PAGEID 2132).  The video evidence does not undermine plaintiff's account.  Taken in a light most favorable to plaintiff, there is an issue of fact as to whether defendants ordered plaintiff out of the shower or whether plaintiff disobeyed the order, necessitating a use of force to extract plaintiff.

In view of the foregoing, the Court finds there are genuine issues of material fact as to whether plaintiff meets the subject component of his excessive force claims against defendants Barney, Joseph, and Spriggs.  Plaintiff's verified statements uniformly describe a situation in which he was *not* actively resisting or attempting to violently assault officers.  Instead, he avers that he was restrained in handcuffs, somewhat impaired by the prior deployment of O.C. spray, not resisting, and nevertheless attacked in retaliation for his altercation with another corrections officer the previous week.  If plaintiff's account is true, it represents precisely the type of malicious and sadistic conduct intended to inflict pain that is prohibited by the Eighth Amendment.

### iii.    *Heck v. Humphrey*, 512 U.S. 477 (1994)

Defendants argue that the "favorable termination" rule from *Heck* also prohibits plaintiff's excessive force claims in *Barney*.  Under that rule, "a § 1983 damages action in

connection with an unlawful conviction or sentence will not lie unless the claimant . . . can show that the underlying conviction or sentence has been invalidated[.]" *Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F.3d 592, 600 (6th Cir. 2007).  Defendants argue that this rule has been extended in the Sixth Circuit to the context of institutional disciplinary convictions.  *See Jennings v. Mitchell*, 93 F. App'x 723, 725 (6th Cir. 2004) ("A prisoner found guilty in a prison disciplinary hearing cannot use § 1983 to collaterally attack the hearing's validity or the conduct underlying the disciplinary conviction.").

Heck, however, is not automatically implicated by a suit that impacts a conviction in a prison disciplinary proceeding absent evidence that the disciplinary conviction affected the fact or duration of a prisoner's underlying sentence.  *See Muhammad v. Close*, 540 U.S. 749, 751-52 (2004) (per curiam).  The Supreme Court explained in *Muhammad* that "[t]he assumption is that the incarceration that matters under *Heck* is the incarceration ordered by the original judgment of conviction, not special disciplinary confinement for infraction of prison rules."  *Id.* at 751 n.1. The Supreme Court subsequently concluded that the term "sentence" as used in *Heck* referred to "substantive determinations as to the length of confinement."  *Wilkinson v. Dotson*, 544 U.S. 74, 83 (2005).  Thus, where success in a prisoner's § 1983 action would not necessarily affect the duration of his underlying sentence or imply immediate or speedier release from confinement, the action is not barred by *Heck* and its progeny.  *Id.* at 82.  *See Westley v. Harris*, No. 23-3177, 2024 WL 4111143, at *6 (6th Cir. Sept. 4, 2024) (citing *Peterson v. Johnson*, 714 F.3d 905, 918 (6th Cir. 2013)) (holding that *Heck* does not apply where the "disciplinary charges" at issue did not "result[  ] in the loss of good-time credits or otherwise affect[  ]" the prisoner's "underlying sentence").

In the instant case, there is no evidence showing the institutional disciplinary convictions related to the uses of force at issue in *Barney* impacted the fact or duration of plaintiff's confinement, such that a *Heck* bar might apply to foreclose plaintiff's § 1983 claims.

### iv.     Qualified immunity

Finally, defendants argue that they are entitled to qualified immunity.  First, defendants reiterate their position that defendants used reasonable, proportionate force in order to restore discipline as opposed to excessive force; therefore, no constitutional violation occurred.  Second, they argue that plaintiff cannot identify precedential authority establishing that defendants Barney, Joseph, and Spriggs' actions violated the Eighth Amendment.

"Qualified immunity protects government officials performing discretionary functions unless their conduct violates a clearly established statutory or constitutional right of which a reasonable person in the official's position would have known." *Brown v. Lewis*, 779 F.3d 401, 411 (6th Cir. 2015) (quoting *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (2006)).  When asserted at the summary judgment stage, "the burden shifts to the plaintiff[] to demonstrate that (1) the facts, taken in the light most favorable to the plaintiff[], show that the officer violated [his] constitutional right, and (2) the right was so clearly established at the time of the officer's conduct that the officer would have understood that he was violating the plaintiff[']s[] rights." *Clark v. Abdallah*, 131 F.4th 432, 444 (6th Cir. 2025).  The Court may address these prongs in either order.  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Because plaintiff has raised genuine issues of material fact on whether defendants used excessive force, the Court turns to the second qualified immunity prong.  Defendants argue that plaintiff may not rely on a generic right to satisfy this prong.  Plaintiff has presented evidence

22

that he was provoked for several minutes and then attacked while he was "handcuffed behind his back blind from O.C. chemical mase." (Doc. 6 at PAGEID 179). Plaintiff avers that he "did not pull or attempt to pull [his] hands from out [of] the hand cuffs." (*Id.* at PAGEID 180-82). (*See also* Doc. 186-1 at PAGEID 2146-47). Plaintiff also avers that he was not otherwise resisting or refusing direct orders. (Doc. 186-1 at PAGEID 2147). It is clearly established that an inmate may not be assaulted for no reason. *See Coley v. Lucas Cnty., Ohio*, 799 F.3d 530, 540 (6th Cir. 2015) ("Under the Fourteenth, Fourth, or Eighth Amendments, assaults on subdued, restrained and nonresisting detainees, arrestees, or convicted prisoners are impermissible.") (citing *Pelfry v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995); *Phelps v. Coy*, 286 F.3d 295, 301-02 (6th Cir. 2002)). Based on the evidence presented, a reasonable juror could conclude that plaintiff was restrained, subdued, and non-resisting when defendants Barney, Joseph, and Spriggs applied the excessive force at issue—violating clearly established law. Defendants Barney, Joseph, and Spriggs are not entitled to qualified immunity.

**IT IS THEREFORE ORDERED THAT**:

1. Plaintiff's request to exceed the page limitation for his response in opposition to defendants' motion for summary judgment (Doc. 186) is **GRANTED**.

**IT IS THEREFORE RECOMMENDED THAT**:

1. Defendants' motion for summary judgment (Doc. 175) be **DENIED**.

Date: 1/20/2026

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

MICHAEL L. JOHNSON,
    Plaintiff,

    vs.

BRIAN BARNEY, *et al.*,
    Defendants.

Case No. 1:21-cv-141

Hopkins, J.
Litkovitz, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.  This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

24